STATE v. THEODORE BOYKIN.

(Filed 11 October, 1961.)

**1. Criminal Law § 122—**

The trial court has the discretionary power to withdraw a juror and order a mistrial when necessary to attain the ends of justice, but in a capital case the court is required to find the facts fully and place them in the record so that the court's action may be reviewed.

**2. Same; Criminal Law § 26—**

In this prosecution for capital offenses, the trial court ordered a mistrial in the exercise of its discretion as necessary to attain the ends of justice upon findings set out in the record that the judge has suffered an attack of angina pectoris and that in view of the judge's physical condition and the orders of his attending physician the judge could not return to the courtroom to resume trial. *Held:* The court had the discretionary power to order the mistrial and such order will not support a plea of former jeopardy upon the trial of the defendant at a subsequent term resided over by another judge.

**3. Criminal Law § 71—**

Where the evidence before the court upon the *voir dire* is not in the record it will be presumed that there was evidence sufficient to sustain the court's finding that the confession of the defendant was voluntary, and evidence elicited by counsel for defendant upon cross-examination that the interrogation of defendant took place in the sheriff's office in the presence of uniformed and armed officers is insufficient to impeach the voluntariness of the confession.

**4. Homicide § 14;    Rape § 4—**

In this prosecution for murder and rape, the fact that the solicitor's order for a post-mortem examination of the victim, introduced in evidence, contained the statement that in the opinion of the solicitor "foul play" had been committed in connection with the death, *is held* not prejudicial, the order having been entered solely to ascertain the exact cause of the death of the victim, and there being plenary evidence complementing, supplementing and corroborating defendant's confession that he attacked the victim with a poker, raped, and then shot her.

APPEAL by defendant from *Fountain, S.J.*, June, 1961, Special Term, DUPLIN Superior Court.

Criminal prosecution upon a two-count bill of indictment charging rape and murder. After the appointment of counsel and the formal arraignment and plea, the chronology of the court proceedings is set out in the following orders:

"PLEA AND ARRAIGNMENT — IN THE SUPERIOR COURT, APRIL, 1961 CRIMINAL TERM

"The defendant is produced before the court and duly arraigned as provided by law and pleads not guilty.

"At the April, 1961, Criminal Term the following named Jurors were chosen, sworn and empanelled to try this cause: Mac D. Hunter, Edward P. Johnson, Leslie Norris, Amos Lanier, Odel Lee Brock, John Nick Kalmer, Gerald Harper, George Brown, Russell Gray, Harvey Myers, Gurney M. Harper, James Handley Atkinson. One alternate juror, Roscoe Whitman, was selected."

About five o'clock on the afternoon of April 5, the presiding judge suffered a heart attack and immediately was sent to the hospital. The next morning he entered the following:

"ORDER TO JURY

"Gentlemen of the jury, I regret this imposition upon you due to circumstances over which I have no control, I feel that I should not require you to be held together pending the resumption of the trial of this very important case both to the State and to the defendant. For that reason, by and with the consent of the solici-

tor and private prosecution and the attorneys for the defendant, I am hereby permitting you to return to your several homes. My physician will not permit me to resume the trial of this case prior to Monday, April 10.

"I shall expect each of you to return to the Courthouse on that day at 10:00 A.M. In the meantime I admonish you that you will not permit anyone to discuss this matter in your presence; that you will not discuss it with anyone, not even a member of your family except perhaps to answer that the trial has not been finished. That you will come to no conclusion about the matter and that in so far as it is humanly possible for you so to do you will keep your minds open. I also admonish you not to read the newspapers as to any article concerning this case, and that you will not listen to any commentator either on radio or television regarding the case now being tried.

"The Sheriff will open court this A.M. and will recess until 9:30 A.M. tomorrow at which time the court will be reconvened and recessed until 10:00 A.M. on Monday, April 10, at which time I hope to be able to meet you and will conclude the trial of this matter.

"This the 6th day of April, 1961

/s/ Chester R. Morris, Judge Presiding.

"The foregoing statement is ordered to be read to the jury by the Clerk of Superior Court and the same to be recorded in the minutes of the court.

"This the 6th day of April, 1961,

/s/ Chester R. Morris,
Judge Presiding."

"O R D E R

"This cause coming on to be heard the above designated term of court for the trial of criminal cases before the undersigned Judge assigned to and presiding over the Courts of the Fourth Judicial District;

"The Court in this cause does find the following facts that heretofore the defendant, Theodore Boykin, was charged with capital crimes of rape and murder, and that prior to his arraignment upon said capital charges Honorable Henry L. Stevens, Jr., by virtue of the authority contained in Chapter 112 Public Laws of 1949 did by Order duly appoint Rivers D. Johnson, Jr., and J. T. Gresham, Jr., Attorneys at Law and members of the Bar, residents in Duplin County and the Fourth Judicial District, to represent said defendant;

"That thereafter at the January Term, 1961, of Duplin County Superior Court, the defendant was indicted upon the following bill of indictment:

"STATE OF NORTH CAROLINA
DUPLIN COUNTY
SUPERIOR COURT
JANUARY TERM, A.D. 1961

"FIRST COUNT:

"The jurors for the State upon their oath present, that Theodore Boykin, late of the County Duplin, on the 24th day of December, in the year of our Lord one thousand nine hundred and sixty, with force and arms, at and the County aforesaid, did, unlawfully, wilfully and feloniously ravish and carnally know Mrs. Lena T. Barnes, a female, by force and against her will and against the peace and dignity of the State.

"SECOND COUNT:

"The jurors for the State upon their oath do further present that Theodore Boykin, late of the County of Duplin, on the 24th day of December, 1960, with force and arms, at and in the County aforesaid, feloniously, wilfully, and of his malice aforethought, did kill and murder Mrs. Lena T. Barnes, against the form of the statute in such case made and provided and against the peace and dignity of the State.

/s/ WALTER T. BRITT, Solicitor.

"Which indictment fully appears in the minutes of the Office of the Clerk of Superior Court for said Term;

"That thereafter and on the 3rd day of April, 1961, the defendant was duly arraigned in Open Court upon the capital felony of said Bill of Indictment, at which time he entered a plea of 'Not Guilty,' and placed himself upon God and his Country;

"That the regular venire was examined and exhausted without having completed the Jury, and the undersigned deeming it necessary did order the Jury boxes of Duplin County be brought into open Court, and that the scrolls bearing the names of One Hundred (100) jurors be drawn from Box No. 1 and placed into Box No. 2;

"That from said special venire the order for which duly appears in the Minutes of Superior Court of Duplin County, a jury was selected at the end of the Session, Tuesday, April 4, 1961, which jury consisted of twelve jurors, who were first impaneled and a thirteenth juror who was subsequently impaneled with the original twelve;

"That an Officer was appointed to take charge of said jury, and the jury was properly instructed and was taken by said Officer to Stone Manor Motel in Wallace, North Carolina;

"That the trial was resumed on Wednesday, April 5, 1961, and proceeded until 5:00 P.M., the State at which time had not finished its evidence; that immediately upon the adjournment of the Court that undersigned was stricken with an attack of angina pectoris; that a physician was summoned to-wit, Dr. J. W. Straughan, who admitted the undersigned to Duplin General Hospital in Kenansville, and about 300 yards from the Courthouse where the undersigned has been a patient since admission, and that upon X-ray and electrocardiogram examination, it has been determined that the undersigned can not return to the Court room;

"That the undersigned has caused Court to be convened each day and recessed until the following day by the High Sheriff of Duplin County;

"That the Court has in its discretion permitted the Jury to go to their respective homes, but has not discharged them; the separation of said Jurors having been by and with the consent of the Solicitor for the State and by the private prosecution, and by and with the consent of the defendant;

"That in view of the physical condition of the presiding Judge and the orders of his attending physician, the undersigned Judge can not return to the Courtroom to resume this trial, and in the sound discretion of the Court, the Court finding it necessary to attain the ends of justice, does hereby order a juror withdrawn to-wit, Edward P. Johnson, and a mistrial ordered, and the jury discharged and the case is hereby continued for the term;

"To the foregoing Order counsel for the defendant do hereby consent as does the defendant in his own person evidenced by his own mark.

"This 8th day of April, 1961,

/s/ Chester R. Morris,
Judge Presiding.

"WE CONSENT:

/s/ Water T. Britt, Solicitor
/s/ H. E. Phillips, Attorney for the Private Prosecution
/s/ Rivers D. Johnson, Jr. ⎰
/s/ J. T. Gresham, Jr. ⎱ Attorneys for Defendant
/s/ Theodore (X — his mark) Boykin, Defendant
WITNESS: /s/ R. D. Johnson, Jr."

"O R D E R

"When the case was called for trial by the solicitor, the defendant before pleading to the indictment entered an oral plea of former jeopardy based on the defendant's assertion and the stipulation of the State that the defendant was not personally present on April 8, 1961, when an order of mistrial was entered by The Honorable Chester Morris, Judge Presiding; and further rests his plea of former jeopardy upon his contention that the order of mistrial is in itself inadequate and insufficient; and upon the further statement by counsel that Judge Morris was permitted to go to Elizabeth City on the 8th day of April, 1961; and upon the stipulations as set out in the hearing of this plea and upon the record of the case and the evidence offered;

"The court finds as a fact that the defendant was on trial at the April 1961 term of this court upon an indictment charging him with the capital crime of rape and murder in the first degree; that during the progress of the trial the presiding judge was stricken with a serious heart condition which consisted of a clot in his coronary artery and he was immediately hospitalized and was advised by his physician, Dr. J. W. Straughan, at the Duplin General Hospital that he could not return to court and could not proceed further with the trial of the case and that if he attempted to do so it would very likely be fatal to the presiding judge.

"From the testimony of the attending physician the Court finds as a fact that the judge then presiding became and is totally and permanently disabled by reason of the clot in his coronary artery, and that on the 8th of April, 1961, he was permitted by his physician to go to a hospital in Elizabeth City near his home by ambulance.

"The Court further finds it as a fact that Judge Morris, while in the hospital in Kenansville, on the 8th day of April, 1961, signed the order which is set out in the record of this case in which he declared a mistrial; that the sole cause of the order of mistrial was the physical condition of Judge Morris as before set out; that the defendant's counsel, with the solicitor in the presence of Judge Morris in the Duplin General Hospital on April 8, 1961, stated that they did not wish the defendant to be brought to the hospital and into the Judge's hospital room to be present while the order of mistrial was dictated or signed by the Judge. At the time the Order of Mistrial was signed by Judge Morris it had been consented to by the defendant in his own proper person and also by each of the attorneys for the defendant as shown and indicated by their signatures which appear on the same page of the Order as the signature of the Judge Presiding.

"Upon the foregoing findings of fact the Court concludes that the plea of former jeopardy is not well taken for that the presiding judge could not, because of his physical condition, then or thereafter, proceed with the trial of the case; and further, that the defendant and his counsel consented to the Order of Mistrial which was entered by the presiding judge on April 8, 1961.

"IT IS NOW THEREFORE ORDERED AND ADJUDGED that the plea of former jeopardy be and the same is hereby overruled and denied.

"This the 5th day of June, 1961. /s/ George M. Fountain, Judge Presiding.

"To the foregoing Order the defendant objects and excepts. /s/ George M. Fountain, Judge."

The State's evidence introduced at the trial tended to show the following: For six years prior to December 24, 1960, Mrs. Lena T. Barnes lived alone in a rural section of Duplin County. The defendant Theodore Boykin had worked on the Barnes' farm. He had not worked, however, during 1960. About 11:30 or 12:00 o'clock on December 24, 1960, the defendant left the automobile of John Moore at a point about one-half mile from Mrs. Barnes' home, stating he intended to visit a friend nearby.

The officers went to the home of Mrs. Barnes about 9:40 on the night of December 24, 1960. They found the doors locked, a slit in the screen, and a broken window to the bathroom. They also found blood in the hall, in the bedroom, in the kitchen, and in the bathroom. They found the dead body of Mrs. Barnes partially concealed under the stairway in the basement. The body was nude from the waist down. The medical expert who examined the body found two skull fractures at the back of the head, a broken nose, multiple contusions on the hands, arms and face. There were two entrance bullet wounds in the chest, one exit wound in the back. Under the skin in the back the physician removed a bullet. A spent bullet was found on the floor near the body. Examination of the vagina disclosed the presence of male sperm. The officers found a metal poker in the living room; also a blue Ivy-league cap in the bathroom.

Mary Elizabeth Kenan testified in substance: She lived about 12 miles from the home of Mrs. Barnes. The prisoner came to her home about 4:30 on the afternoon of December 24, 1960. He had a brown paper bag in which were a red sweater, a green sweater, nylon panties and a box of candy. He requested the witness and her daughter to wrap these article as gifts, stating he would go to town and would be back to pick them up. He returned about 7:30, stated, "I have some

more presents for you." He gave her a billfold with the name "Mrs. Lena T. Barnes" on it. He gave Sara a comb and brush set, and a wrist watch to Lilly Mae Peterson. He had a pistol which he asked Mary Elizabeth Kenan to keep for him overnight. He left about 1:30 but returned next morning about 10:30 o'clock, when she gave him the pistol. It contained three live cartridges. She saw the defendant again that day, December 25, about noon. He was in the custody of the officers.

At the time of the arrest near Rose Hill, the defendant was riding with Henry Wiggins in the latter's automobile. After the arrest Henry Wiggins found a pistol "under the dashboard to my car. It was not my pistol. . . . I never saw that pistol before." The witness delivered it to Sheriff Dempsey.

Mrs. Faircloth identified the pistol and the watches as the property of her sister, Mrs. Barnes. Mr. Brady, local manager of the Electric Membership Corporation, identified the billfold as a gift from the corporation to Mrs. Barnes at their Christmas party the week preceding Christmas. Mary Elizabeth Kenan and Sara Freeman identified the green sweater, the red sweater, the box of candy, and the wrist watch as the articles the defendant gave as presents on Christmas Eve. The other watch was in the defendant's pocket at the time of his arrest.

John Boyd, the ballistics expert of the State Bureau of Investigation, testified he made laboratory tests of the two bullets and the revolver which had been offered in evidence and in his opinion the bullets had been fired from the revolver.

The State offered the following testimony of Hoyle T. Hartley:

"Mr. Hartley testified that he introduced himself to the defendant, showed him his credentials and told him he was a Special Agent for the S. B. I., and told Theodore Boykin that he did not have to tell anything, but that anything he would say could be used against him in court. Also told him they wished to question him concerning the rape and murder of Mrs. Lena T. Barnes, that no threats or promises of reward or hope of reward was made to him. That Theodore told them that sometime during the afternoon of December 24, 1960, he went to Mrs. Lena T. Barnes' home, that he entered by the back yard, came up onto the back porch, punched a hole in the bathroom screen, opened the screen with a pocket knife, broke out the window, unlocked the bathroom window, raised it and entered. That he stated he closed the window, locked it and pulled the shade down. That Theodore further stated that he was there approximately thirty minutes when he heard Mrs. Barnes drive into the carport. That he went into the room where the heater was located, got a long object from beside the

heater and stood near the kitchen door. That Mrs. Barnes entered the kitchen door with a package in her hand, that he struck her one or two times with the object, that she fell backwards and grasped for the kitchen bar then fell backward onto the floor. That Theodore stated he did not remember anything else until in the room where the heater was located he remembered he had Mrs. Barnes on the floor and that he raped her there, in that room. That he stated he then picked her up in his arms and carried her down into the basement, laid her on the basement floor near the stairs. He then started back up the steps and after he had gotten to the first landing in the steps he turned around and took the .32 caliber pistol, which he had in his pocket, and shot Mrs. Barnes. That he stated he then went upstairs and onto the back porch and got some mops there and attempted to mop up the blood on the kitchen floor. That he then went into the room where the heater was located, got the wrist watch from the dresser, went to her bedroom and got another watch, a box of candy, billfold, sweaters, lady's pants. That he then left the house by the back door and later that night went to the home of Mary Kenan. That Sara Freeman and Lilly Mae Peterson were there and he gave out the things he got from Mrs. Barnes' home to them. He stated that on the 25th he gave the .32 caliber pistol to Mr. Richard Wiggins who lives in Wallace near the power plant, also a colored person. That the defendant said be gave the billfold and red sweater to Mary Kenan."

On April 25, the Solicitor ordered the Coroner of Duplin County to exhume the body of Mrs. Barnes and conduct a post-mortem examination. The order, together with the objection and the court's ruling thereon, are here quoted in full:

"NORTH CAROLINA
DUPLIN COUNTY
IN THE MATTER OF THE DEATH
OF MRS. LENA T. BARNES                    ORDER

"TO: Mr. Hector McNeill, Coroner of Duplin County:

"It appearing to the undersigned that Mrs. Lena T. Barnes died in Duplin County, North Carolina, on December 24, 1960, and the undersigned being of the opinion that foul play was committed in connection with the death of the said Mrs. Lena T. Barnes and that it is necessary that her body be exhumed for the purpose of determining the cause of her death;

"Therefore, you are hereby ordered and directed to exhume the body of Mrs. Lena T. Barnes and to direct a post-mortem examination by one or more physicians in order to determine the exact cause of the death of the said Mrs. Lena T. Barnes.

"This the 25th day of April, 1961. Walter T. Britt, Solicitor for the Sixth Solicitorial District of North Carolina.

"Defendant objected to the words 'FOUL PLAY'."

Objection was overruled.

"JUDGE TO THE JURY: Gentlemen of the jury, the document Mr. Britt just read is admitted only as it may show authority for having the body of Mrs. Barnes exhumed. The statement of the possibility of foul play appearing in the instrument does not constitute any evidence against the defendant, or any evidence that there was foul play and you will not consider that portion of that document for any purpose whatever. Completely disregard that. The only purpose of the document itself being offered is to show that the solicitor of the district authorized and directed that the body be exhumed. Consider it for that purpose and no other."

Dr. Hawes, who conducted the post-mortem, testified that in his opinion the death of Mrs. Barnes was caused by the chest injuries, one of which pierced the heart.

The court overruled the defendant's motion to nonsuit, after which the defendant rested without offering evidence. The jury returned these verdicts: (1) Guilty of rape without recommendation of life imprisonment. (2) As to the second count, guilty of murder in the first degree without recommendation of life imprisonment.

From a separate judgment of death in each case, the defendant appealed.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Asst. Attorney General, for the State.*

*R. D. Johnson, Jr., J. T. Gresham, Jr., for defendant, appellant.*

HIGGINS, J.  The defendant seeks a new trial on each count in the indictment upon the ground the court committed error by (1) overruling his plea of former jeopardy, (2) admitting in evidence the defendant's confession, (3) permitting the State to introduce the order for the post-mortem examination.

The power of the presiding judge to order a mistrial in a criminal case after the jury has been impaneled, and before verdict, has been the subject of review by this Court beginning with *State v. Garrigues,* 2 N.C. 241. The many subsequent decisions dealing with the court's power to discharge a jury and order a new trial have been cited and analyzed by *Parker, J.,* in *State v. Cofield,* 247 N.C. 185, 100 S.E. 2d 355; by *Bobbitt, J.,* in *State v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243;

by *Stacy, C.J.,* in *State v. Harris,* 223 N.C. 697, 28 S.E. 2d 232; and in *State v. Beal,* 199 N.C. 278, 154 S.E. 604. "It is only in cases of necessity in attaining the ends of justice that a mistrial may be ordered in a capital case without the consent of the accused."

In the light of our decisions, the defendant's objection to the order of mistrial in this case and his plea of former jeopardy based thereon cannot be sustained. Both he and his counsel of record consented to the order and signed it. However, in view of the condition of the judge's health, the order would have been valid even if the defendant and his counsel had objected. It goes without saying that a superior court trial cannot go on without a presiding judge. In this instance, before the State had completed its evidence, Judge Morris suffered a heart attack, a doctor was called immediately, and the Judge was removed from the courthouse to the hospital about 300 yards away. Immediately, he ordered the court recessed from day to day, hoping to recover sufficiently to continue the trial. However, on the third day after his admission, Judge Morris, from his hospital bed, made findings and ordered a mistrial heretofore quoted in full.

The findings of fact while terse and succinct, are amply sufficient to show necessity for the mistrial. This is so even under the rigid requirements in the early days of this State's judicial history and without the prisoner's consent. In *State v. Ephraim,* 19 N.C. 162; *In the Matter of Spier,* 12 N.C. 491, the rule is stated: " . . . that the jury cannot be discharged without the prisoner's consent, but for evident, urgent, overruling necessity, arising from some matter occurring during the trial, which was beyond human foresight and control; and generally speaking, such necessity must be set forth in the record."

The rule has been subsequently relaxed: "It is well settled, and admits of no controversy, that in all cases, capital included, the court may discharge a jury and order a mistrial when it is necessary to attain the ends of justice. It is a matter resting in the sound discretion of the trial judge; but in capital cases he is required to find the facts fully and place them upon the record so that upon a plea of former jeopardy as in this case, the action of the court may be reviewed." *State v. Beal, supra.* The plea of former jeopardy was properly overruled.

By his second assignment of error the defendant challenges the admission of his confession. The record recites: "After hearing evidence in the absence of the jury, Judge Fountain overruled the objection, holding that whatever the prisoner said was voluntary." The record does not disclose what evidence the judge heard in the absence of the jury. It is presumed, therefore, the evidence was sufficient to sustain the finding.

After Mr. Hartley testified, the defendant moved to strike his testimony. The testimony is quoted in the factual statement. The court refused to allow the motion, whereupon the defendant, by cross-examination, sought to show additional facts relating to the confession. The cross-examination disclosed that the interrogation of the defendant took place in the sheriff's private office in the presence of five officers, three of whom were in uniform and were armed. "The prisoner observed he could not write." Nothing else was offered to impeach the confession. The evidence relating thereto was properly admitted as voluntary. *State v. Davis*, 253 N.C. 86, 116 S.E. 2d 365; *State v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572; *State v. Mays*, 225 N.C. 486, 35 S.E. 2d 494.

Finally, counsel for the defendant assign as error the admission of the solicitor's order to the coroner to exhume the body of Mrs. Barnes. The objection was made upon the ground the order contained the words "foul play." The purpose of the order was to obtain, by the post-mortem examination, evidence as to the cause of death. Based on the post-mortem examination, Dr. Hawes testified that in his opinion death resulted from the chest wounds.

The State's evidence was full, complete, and convincing. The defendant knew that Mrs. Barnes lived alone. He had worked on her farm. He was seen half a mile away about noon on December 24. At 4:30 that same afternoon he was 12 miles away at the home of Mary Elizabeth Kenan. At the time he had a paper bag containing a red sweater, a green sweater, a pair of nylon panties and a box of candy. He went to town, or so stated, and returned about 7:30. He announced he had some more presents. He gave to those attending the Christmas party the sweaters, panties, candy, a wrist watch, and the billfold with the name Lena T. Barnes on it. He gave Mary Elizabeth Kenan the pistol to keep overnight for him. He returned next morning for the pistol. After his arrest it was discovered hidden in Henry Wiggins' automobile in which he had been riding. He had another watch in his pocket. The pistol, watches, and the billfold were identified as the property of Mrs. Barnes. The circumstances and the confession complemented, supplemented, and corroborated each other without any inconsistencies even as to minor details. The whole evidence pointed unerringly to the defendant's guilt.

The hearing in this case was well conducted both from the  bench and from the trial tables. It has been well presented here. After examination of the record with that care which the gavity of the consequences requires, we find in the trial

No error.