STATE OF NORTH CAROLINA v. ANDREW LYNN JONES

No. 8310SC912

(Filed 3 April 1984)

**Constitutional Law § 34; Criminal Law § 128— declaration of mistrial—failure to find facts supporting—record not supporting declaration of mistrial—double jeopardy attaching**

In a prosecution for the murder of defendant's wife's boyfriend, the trial court improperly entered a mistrial over defendant's objection, and defendant's plea of former jeopardy or motion to dismiss at his subsequent trial should have been granted and defendant should have been discharged. Before granting a mistrial, the trial judge failed to make findings of fact with respect to the grounds for the mistrial and assert the findings in the record as required by G.S. 15A-1064, and the record does not otherwise make clear the basis for the order. There was no positive indication of a deadlock of the jury and the court failed to make an inquiry and factual findings as to whether or not the jury was deadlocked. Further, the record substantiates a conclusion that the jury was carefully and conscientiously deciding a capital case; that their questions on malice indicated a consideration of at least second degree murder; that the jury's subsequent questions on provocation indicated that they had eliminated first degree murder and were considering either second degree murder, manslaughter, or acquittal; and that the judge, provoked by the actions of the prosecutor, suddenly declared a mistrial after answering the jury's last question. The improper order of mistrial was clearly prejudicial; not only did defendant lose his right to have his trial completed before the first jury without proper inquiry, but he also had to undergo the stress of another full trial on the first degree murder charge.

APPEAL by defendant from *Farmer, Judge.* Judgment entered 27 July 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 6 February 1984.

Defendant and his wife separated in early 1979 after six years of marriage. She moved out and shortly thereafter they signed a separation agreement. Defendant's wife became romantically involved with David Lee Height, a mutual friend. Defendant and his wife continued to see one another and apparently considered reconciliation. On 1 July 1979, however, defendant and his wife had a conversation in which she told him she would not return to him. In the early morning of 2 July 1979, defendant came to his wife's apartment. Height was there with her. After some discussion, defendant pulled out a .25 caliber pistol and shot Height once in the chest. Height died as a result of the shooting. Defendant turned himself in to the police four days later. Because

his wife could not testify against him, the murder indictment against him was dismissed. Following the decision of the Supreme Court in *State v. Freeman,* 302 N.C. 591, 276 S.E. 2d 450 (1981), which changed the strict common law rule of spousal disqualification, defendant was reindicted for the murder of Height. From a conviction of second degree murder defendant appeals. Further facts are set out as necessary in the opinion.

*Attorney General Edmisten, by Assistant Attorney General Thomas F. Moffitt, for the State.*

*Dement, Askew & Gaskins, by Johnny S. Gaskins, for defendant appellant.*

JOHNSON, Judge.

The substantive facts outlined above are not seriously disputed. Rather, defendant raises errors of procedure resulting in violation of the constitutional guarantee against double jeopardy.

I

The underlying error which defendant asserts, and upon which all his other assignments of error are predicated, is that the trial court improperly declared a mistrial at his first trial. The proceedings leading up to the declaration of mistrial were as follows:

The trial began 18 April 1983 in Wake County Superior Court before the Honorable Samuel E. Britt and a duly empanelled jury. After presentation of evidence by both sides, the court gave its charge to the jury. (No errors are alleged, nor are any apparent, in these or any other instructions given.) The jury retired at 2:40 p.m. on 20 April. At approximately 3:40 p.m., the jury returned and asked the court to redefine murder in the first degree, murder in the second degree, and voluntary manslaughter. The court repeated the instructions as requested and repeated its mandate. At the request of the foreman, the court also gave a definition of malice. At 5:03 p.m., the court called the jury in, ordered the verdict sheet sealed, and declared a recess. At 9:30 a.m. the next morning, the court reconvened with all jurors present. Before they resumed deliberation, the foreman in-

dicated that several members had asked the day before for a redefinition of malice and under what conditions it could be eliminated from consideration, and "any other pertinent information you think might help us." The court carefully and correctly defined malice as it applies to the varying degrees of homicide. The jury retired at 9:45 a.m.

At 12:50 p.m., the jury returned again and the following ensued:

COURT: All right, all parties to the trial are now back in the courtroom in the case of State of North Carolina verses [sic] Andrew Lynn Jones. Will the foreman please rise. The baliff indicated you wanted me to call you in shortly before the lunch hour for the purpose of a question, is that correct?

FOREMAN: Yes, it is, Your Honor.

COURT: What's the question?

FOREMAN: Your Honor, the question arises from a question of law that the Prosecutor read concerning a case. I believe it said and stated that mere words alone cannot raise a heat of passion, something of that affect [sic]. Our question is: Can words alone provoke heat of passion? And the second question: What all can provoke heat of passion?

COURT: Thank you, you may be seated. It is true, members of the jury, that a true statement of the law is that mere words alone can provoke a passion, a state of passion, and I will instruct you that is a correct statement of law. Now your next question as to what possibly could provoke passion is beyond my ability to answer. I have no knowledge of all the endless list of things that might occur in this world that might provoke passion and could not express it in terms of the law.

FOREMAN: Your Honor, for clarification, it was our understanding that the Prosecutor, the case that he read said mere words alone cannot provoke a heat of passion.

COURT: Is that what you stated to this jury? I was out of the room during the argument. Is that what you stated to the jury?

MR. KNUDSEN [Assistant District Attorney]: I read a case from the State of North Carolina that stated mere words alone would not constitute adequate provocation, which I have reason to believe that's the case. I read from the Supreme Court of North Carolina.

COURT: We have reached an impasse. I withdraw Juror Number One and declare a mistrial. Thank you very much, members of the jury, for your services.

The court thereafter entered an order which read in its entirety as follows: "The judgment of this court is that the jury has reached an impasse and further deliberation would not resolve this matter. The Court therefore withdraws juror #1 and declares a mistrial." To this order defendant properly and timely objected.

A second trial took place before the Honorable Anthony M. Brannon and a jury on 20 June 1983; defendant moved to dismiss on the ground of former jeopardy and the court denied the motion. Defendant immediately gave notice of appeal, but the trial went forward nonetheless. It resulted in a mistrial on the motion of defendant. At a third trial before the Honorable Robert L. Farmer and a jury, defendant unsuccessfully renewed his motion to dismiss. That trial resulted in a verdict of guilty of second degree murder on 27 July 1983. The judgment entered on this verdict is the jurisdictional basis of this appeal; the earlier appeal was dismissed as interlocutory. *State v. Jones*, 67 N.C. App. 413, 313 S.E. 2d 264 (1984) (Johnson, J., dissenting). Defendant's only real contention here is that his motions to dismiss for former jeopardy were improperly denied because the first mistrial was erroneously ordered.

## II

A defendant's right to have his trial completed before a particular tribunal is a "valued right," guaranteed by the constitutional prohibition of double jeopardy. *Wade v. Hunter*, 336 U.S. 684, 93 L.Ed. 974, 69 S.Ct. 834 (1949). As stated by the United States Supreme Court in *Arizona v. Washington*, 434 U.S. 497, 503-5, 54 L.Ed. 2d 717, 727-28, 98 S.Ct. 824, 829-30 (1978):

The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is

not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial. (Footnotes omitted.)

This right has also been recognized in North Carolina. *See State v. Williams*, 51 N.C. App. 613, 277 S.E. 2d 546 (1981) ("cherished right").

Consequently, a standard and long-established feature of American jurisprudence has been that the jury may only be discharged with the defendant's consent where "there is a manifest necessity for the act." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *see also Arizona v. Washington, supra*. North Carolina courts have long adhered to this rule, requiring either "physical necessity" or "the necessity of doing justice" to discharge the jury. *State v. Crocker*, 239 N.C. 446, 80 S.E. 2d 243 (1954); *see also State v. Birckhead*, 256 N.C. 494, 124 S.E. 2d 838 (1962). As pointed out in *Arizona v. Washington, supra* at 506, 54 L.Ed. 2d at 728, 98 S.Ct. at 830-31, such words "do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." Therefore, the trial court must exercise its discretion in applying the standard of necessity. *Id.; United States v. Perez, supra; State v. Birckhead, supra.*

This discretion is a limited one, however, and must be exercised with care, in view of the important rights at stake. True necessity must exist. Although the United States Constitution does not require that a state trial court make an explicit finding of "manifest necessity" or "articulate on the record all the factors which informed the deliberate exercise of his discretion," *Arizona v. Washington, supra* at 517, 54 L.Ed. 2d at 735, 98 S.Ct. at 836, it does require that the record adequately disclose the necessity on which the order rests. *Id.* North Carolina, however, requires more. Before 1977, trial courts, in capital cases such as this, had

to fully find the facts supporting mistrial orders and place them in the record so that their actions could be reviewed on appeal. *State v. McKenna,* 289 N.C. 668, 224 S.E. 2d 537 (1976); *State v. Boykin,* 255 N.C. 432, 121 S.E. 2d 863 (1961). Findings were not required in non-capital cases, and the trial court's decision was reviewable only in cases of gross abuse of discretion. *State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972).

In 1977, the General Assembly enacted Article 62 of Chapter 15A of the General Statutes, "Mistrial." It codified existing law and spelled out the limited number of situations in which the court may declare a mistrial. More importantly for this case, the act included G.S. 15A-1064, which provides: "Before granting a mistrial, the judge must make findings of fact with respect to the grounds for the mistrial and insert the findings in the record of the case." This section is mandatory. As stated in *State v. Johnson,* 60 N.C. App. 369, 372, 299 S.E. 2d 237, 239, *disc. rev. denied,* 308 N.C. 679, 304 S.E. 2d 759 (1983):

> Our statute specifically requires, and we strongly urge adherence thereto, that findings be made and entered into the record *before* a declaration of mistrial. Even the most exigent of circumstances do not justify circumvention of this rule. (Emphasis original.)

The purpose of G.S. 15A-1064 is clearly to ensure that mistrial is declared only where there exists real necessity for such an order. The right of the accused to completion of the proceedings before the same tribunal is thereby protected from sudden and arbitrary judicial action. Judicial action, before being taken, must have support in the record. The pre-1977 cases support this interpretation: required findings ensure that the court's power is "exercised with caution and only after a careful consideration of all available evidence and only after making the requisite findings of fact on the basis of evidence before the court at the time judicial inquiry is made." *State v. Crocker, supra* at 452, 80 S.E. 2d at 248.

In *State v. Boykin, supra,* the trial judge suffered a heart attack at the courthouse. After three days of keeping the jury on call for his hoped-for return, the judge declared a mistrial from his hospital bed, finding *inter alia* that he had suffered a heart attack, that upon medical examination it had been determined he could not return, and that the defendant consented to mistrial.

The Supreme Court affirmed, finding that although the findings were "terse and succinct" that they justified the order.

In *State v. Crocker, supra,* the trial court ordered a mistrial upon discovery of an incident at the hotel where the jury spent the night, in which certain jurors became intoxicated and at least one required some thirty minutes to be quieted down. The Supreme Court held that the order was not justified, since no evidence was heard nor findings made as to the crucial question, *i.e.,* the jurors' fitness to serve when present in court. The trial court's findings here clearly do not suffice when compared with the standard implicit in *Boykin* and *Crocker, supra.*

In *State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978), the jury transmitted a note to the judge that it could not come to an agreement. The court then interrogated the jury foreman and elicited his opinion that the jury was hopelessly deadlocked. Upon inquiry, the other jurors indicated agreement with the foreman. In *State v. Battle,* 279 N.C. 484, 183 S.E. 2d 641 (1971), the jury told the court they were "six and six" upon which the court instructed them to resume deliberation. Upon their return, they stated they were still similarly divided and each juror indicated a personal opinion that they could never agree. The court then ordered a mistrial. In both *Alston* and *Battle* the Supreme Court held that the court properly exercised its discretion. In *State v. Booker,* 306 N.C. 302, 293 S.E. 2d 78 (1982), the Supreme Court again upheld a declaration of mistrial where the jury had sent a note to the judge indicating it was deadlocked. No such positive indication appears anywhere in this record. Nor did the court undertake any sort of inquiry as in *Alston* and *Battle.* The trial judge admitted that he made no inquiry as to whether the jury was deadlocked. Therefore, not only did no positive indication of deadlock enter the record, but the court also could not exercise its discretion whether or not to order the jury to continue deliberations. *State v. Battle, supra.* The trial court's failure to make both an inquiry and factual findings thus constituted a serious deviation from proper practice and precluded defendant's timely assertion of his rights. We, therefore, hold that the court erred in ordering a mistrial.

Our holding that the order of mistrial was error does *not* mean that a mistrial could not have been declared in this case. It

*does* mean that where a defendant insists on his right to have his trial completed before one jury, that right may only be denied after the demonstrated exercise of careful judicial inquiry and deliberation. In addition, that right is sufficiently important and once lost is irretrievable, so that absent compelling reasons, there is no excuse for the trial court's failure to make the mandated findings of fact before entering the order. Therefore, an order so entered, as here, is erroneous.

### III

Nevertheless, argues the State, the real purpose of G.S. 15A-1064, which is to enable the reviewing courts to determine that manifest necessity for mistrial existed and that the judge exercised sound discretion, has been satisfied by the creation of an adequate record. The State relies on the federal constitutional requirement as set forth in *Arizona v. Washington, supra,* that explicit findings are not necessary where an adequate record is made, to argue that G.S. 15A-1064 should require nothing more.

It is elementary that all state laws in conflict with the United States Constitution and the laws of the United States are without effect. U.S. Const. Art. VI, cl. 2; *Maryland v. Louisiana,* 451 U.S. 725, 68 L.Ed. 2d 576, 101 S.Ct. 2114 (1981). However, the states may of their own accord impose higher standards of procedural protection on their law enforcement system. *Cooper v. California,* 386 U.S. 58, 17 L.Ed. 2d 730, 87 S.Ct. 788 (1967). The Constitution of North Carolina expressly grants the General Assembly the power to enact rules of criminal procedure such as G.S. 15A-1064. N.C. Const. Art. IV, § 13(2).

In construing the statutes of North Carolina, the intent of the legislature controls. *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978); *In re Hardy,* 294 N.C. 90, 240 S.E. 2d 367 (1978). A construction which will defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language. *In re Hardy, supra.* Furthermore, none of the statutory provisions of an act are to be deemed useless if they can reasonably be considered as adding something to the act. *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972).

Applying the foregoing principles we must reject the State's contention. G.S. 15A-1064 clearly requires findings of fact. Had

the General Assembly wished to allow the matter to remain entirely in the discretion of the trial courts, it would have done so. Instead, in a departure from earlier law, the legislature made such findings mandatory for all orders of mistrial. The State's contention, if adopted, would make such findings necessary only where the record did not otherwise make clear the basis for the order. Such a rule, while satisfying the United States Constitution, would effectively render G.S. 15A-1064 meaningless; its provisions subject to virtually unlimited discretion of the trial courts to evaluate the state of the record and decide whether findings are required. The General Assembly's action is expanding existing law and its clear mandatory language indicate a contrary intent. Furthermore, this Court should not be subjected to needless litigation of the sufficiency of the record to warrant findings. The provisions of G.S. 15A-1064 are simple and clear; their uniform application will protect valued rights of defendants and greatly facilitate the process of appellate review.

The State's reliance on *Arizona v. Washington, supra,* overlooks one of the key features of that case. Although the trial judge there did not make explicit findings, he did allow substantial time for deliberation and allowed counsel for both sides full opportunity for argument on the record, after indicating the pertinent legal problems. Such an effort is entirely lacking here; the two cases are clearly distinguishable in this vital respect.

To repeat, it is only a secondary purpose of G.S. 15A-1064 to ensure that a full record is made. Its primary purpose is to protect the valued constitutional rights of criminal defendants. It would seriously weaken this protection if trial judges could *ex post facto* develop explanations for mistrial rulings. Findings must be made *before* the declaration to ensure full deliberation; the creation of a record subsequently is no substitute, except perhaps in a few isolated cases. *See State v. Johnson, supra* (judge, former heart attack victim, felt another attack coming on; failure to make findings in advance curable error).

## IV

Assuming *arguendo* that cure was available, the record developed does not lend support to the State's contention. The trial judge testified at the habeas corpus hearing that the jurors' faces and demeanor led him to believe that the jury was divided

and confused. The requests for repetition of various parts of the charge and certain remarks by the foreman also constituted basis for this belief. Ordinarily appellate courts give great credence to findings of the trial court. Here, however, the judge's explanation for his action consists solely of subjective impressions first revealed twenty days after the trial, without contemporaneous inquiry having been made to substantiate them or opportunity given for the parties to be heard. Although the record supports an inference that the jury was experiencing difficulty understanding the law arising upon the evidence, the record also substantiates the conclusion that the jury was carefully and conscientiously deciding a capital case; that their questions on malice indicated consideration of at least second degree murder; that the jury's subsequent question on provocation indicated that they had eliminated first degree murder and were considering either second degree murder, manslaughter, or acquittal; and that the judge, provoked by the actions of the prosecutor, suddenly declared a mistrial after answering the jury's last question.

The impressions of the trial judge clearly do not rise to the level of compelling circumstances or clear deadlock required by North Carolina law. *State v. Birckhead, supra; State v. Alston, supra.* The absence of more definitive findings only underscores again the importance of complying with G.S. 15A-1064. The constitutional rights at stake are sufficiently important that they should not be left to speculation.

The State also contends that the order entered following the habeas corpus hearing is conclusive here. The only relevant parts of that order are (1) that there was ample evidence in the record from which the trial judge could have found the jury was hopelessly confused as to the law, (2) that the jury had deliberated more than five hours, almost as long as the evidence had taken, and (3) that their questions indicated they had not eliminated any possible verdict. These are not specifically labelled findings of fact, nor do they appear to be anything more than conclusions of law, relative to the issues presented here. In the record of both the trial and the hearing, the only real "facts" justifying mistrial are the trial judge's subjective impressions from the jury's faces, and his subjective interpretation of several remarks by the foreman. Assuming *arguendo* that the order entered following the

habeas corpus hearing *is* conclusive, it does not contain these crucial facts.

V

We have decided that the order of mistrial was erroneous, and that the error was not subsequently cured. The appropriate remedy must now be fashioned.

It is abundantly clear that jeopardy had attached at defendant's first trial. *State v. Neas*, 278 N.C. 506, 180 S.E. 2d 12 (1971). The jury had apparently eliminated the first degree murder charge when the mistrial was declared. The improper order of mistrial was thus clearly prejudicial; not only did defendant lose his right to have his trial completed before the first jury without proper inquiry, but he also had to undergo the stress of another full trial on the first degree murder charge.\* Therefore, defendant was unconstitutionally subjected to double jeopardy for the same offense.

Although the cases are few, it is long and firmly established that where a mistrial is improperly entered over defendant's objection, a plea of former jeopardy or a motion to dismiss must be granted and the defendant discharged. *State v. Birckhead, supra; State v. Crocker, supra; State v. McGimsey*, 80 N.C. 377 (1879); *State v. Garrigues*, 2 N.C. 241 (1795). The holding in *State v. Crocker, supra* is especially relevant here, as it was "predicated solely upon the insufficiency of the facts as found to support the order of mistrial." 239 N.C. at 453, 80 S.E. 2d at 248. The Supreme Court ruled:

> Our holding here is that the facts and circumstances set forth in the findings of fact are not of such compelling nature as to justify a further relaxation of a rule of such importance in safeguarding the life and liberty of a citizen against repeated prosecutions for the same offense.

---

\* This Court has recognized the possibility of harmless error in failure to comply with G.S. 15A-1064. *State v. Johnson, supra.* The holding in *Johnson* was based on its "peculiar" facts, however; the trial judge, a former heart attack victim, felt the now familiar pains coming on and ordered a mistrial. Physical necessity permitted the order, G.S. 15A-1063, and clearly excused the failure to find facts. Nothing in this case suggests that the rule in *Johnson* should apply.

The preservation of the salutary principle underlying the plea of former jeopardy in capital cases is of far greater importance than the service by this defendant of the prison term imposed . . . The uncertainty, anxiety and expense of two trials for the capital felony of murder in the first degree, within themselves, constitute an ordeal that is the equivalent of substantial punishment.

*Id.* The Court, therefore, ordered the defendant's discharge. *A fortiori*, where the trial court makes no findings at all in the course of improperly ordering a mistrial over defendant's timely objection, and nothing prevents the court from doing so, the defendant cannot be tried again for the same offense. Therefore, defendant must be discharged and the charges against him dismissed.

The judgment appealed from is accordingly

Reversed.

Chief Judge VAUGHN and Judge WEBB concur.