STATE OF NORTH CAROLINA v. CARVIN GERODE COVIEL

No. 8318SC969

(Filed 17 July 1984)

**Constitutional Law § 34; Criminal Law §§ 122.2, 128.2— jury not deadlocked—mistrial improper—double jeopardy**

   Defendant's second trial for the same offenses subjected him to double jeopardy, and defendant's motion to terminate the trial appealed from should have been granted on that ground where the record showed that three felony counts of some complexity involving two distinct incidents and complaints were being tried; the jury deliberated from 1:30 p.m. to 5:15 p.m. on a Friday afternoon; the trial judge asked how they stood and then gave them the charge that is given deadlocked juries; the jury then asked whether there was a time limit when they should stop deliberating and come back the next day or on Monday; the judge refused to answer but instead sent the jury back at 5:24 p.m. for further deliberations; at 6:00 p.m. the judge brought the jury back in and declared a mistrial despite defendant's request that the jury be allowed to continue its deliberations; at that time, the judge did not ask the jury whether any of them had changed their minds since his earlier questioning of them or what their disposition then was in regard to reaching a verdict; and nothing in the record would justify the assumption that the jurors were deadlocked and unable finally to agree upon a verdict.

   APPEAL by defendant from *Rousseau, Judge*. Judgments entered 5 May 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 2 April 1984.

   *Attorney General Edmisten, by Assistant Attorney General Evelyn M. Coman, for the State.*

   *William H. Dowdy for defendant appellant.*

   PHILLIPS, Judge.

   On May 5, 1983, in a trial presided over by Judge Rousseau, defendant was convicted of second degree kidnapping, armed robbery, and attempted common law robbery, for which he was sentenced to prison for terms of nine years, fourteen years, and three years respectively. Though several assignments of error based on that trial are brought forward, the error that defendant mainly relies upon is based on an earlier trial for the same offenses before Judge Washington, which ended on September 10, 1982 by an order of mistrial. Defendant contends there was no justifiable basis for ending the first trial when the court did and

that his second trial for the same offenses therefore violated the double jeopardy clause of the Fifth Amendment to the United States Constitution, made applicable to the several states by the Fourteenth Amendment.

Though the ban against trying one twice for the same offense is one of the foundation stones of the common law, was part of North Carolina's jurisprudence before the states united, and is explicitly embedded in the Constitution of the United States, it is not absolute. It has no application to trials that are repeated because circumstances, over which the State and court had no control, unavoidably prevented a prior trial from running its course to verdict; but it does apply to trials that are not completed for unnecessary or merely expedient reasons over a defendant's objection. Circumstances that justify terminating a criminal trial before verdict include, but are not limited to, the serious illness of the trial judge, *State v. Boykin*, 255 N.C. 432, 121 S.E. 2d 863 (1961), juror misconduct, *State v. Tyson*, 138 N.C. 627, 50 S.E. 456 (1905), juror illness, *State v. Beal*, 199 N.C. 278, 154 S.E. 604 (1930), and the inability of the jury to reach a verdict, *State v. Honeycutt*, 74 N.C. 391 (1876). The only possible justification for terminating the defendant's first trial, according to the record, was that the jury was unable to reach a verdict; no other possibility is suggested.

With respect to the necessity of discharging the jury in that trial, the record shows the following: The trial began Wednesday morning, September 8, 1982 and the jurors began their deliberations at 1:30 o'clock Friday afternoon, September 10, 1982—the judge's charge having been given immediately before the court recessed for lunch. At 3:29 o'clock the jury returned to the courtroom with questions about the statutes involved, a certain part of the testimony, and an exhibit. The judge and lawyers then conferred, after which the judge recharged the jury to some extent; and at 3:52 o'clock the jury again retired to their room to resume their deliberations. At 5:15 o'clock the jury again returned to the courtroom and the complete proceedings of the court from that time until a mistrial was ordered were as follows:

THE COURT: Ladies and gentlemen of the Jury, I understand from the bailiff that you had a question about what you should do in the event you were not able to agree upon a ver-

dict. Before speaking to you any further about that, I need to ask you certain questions, and I want to be sure that you understand them. If I ask you about the numerical way in which you stand, I do not want to know whether your vote is for conviction or for acquittal. But I will ask the foreperson of the Jury if you can tell me if you have agreed upon a verdict as to any one of the three charges, and if you have not been able to agree upon any one of the three charges, I will ask you how you stand numerically, and by that, I mean for you to say six to six or ten to two, or something like that, but not whether the first number is for conviction or acquittal or so forth.

I will ask the foreperson to stand, please.

As foreperson of this Jury, may I ask you if you have agreed upon a verdict as to the charges mitigating kidnapping or second degree kidnapping?

JURY FOREPERSON: No, sir.

THE COURT: May I ask you numerically how you stand, if you have voted?

JURY FOREPERSON: Seven to five.

THE COURT: As to the charge of attempted common law robbery or attempted strong-armed robbery, have you reached a verdict as to that?

JURY FOREPERSON: No, sir.

THE COURT: How do you stand numerically as to that?

JURY FOREPERSON: Seven to five.

THE COURT: As to the charge of robbery with a dangerous weapon, this being with regard to Duff's Smorgasbord Restaurant in the early evening hours of January 7, have you agreed on a verdict as to that?

JURY FOREPERSON: No, sir.

THE COURT: May I ask how you stand numerically?

JURY FOREPERSON: Seven to five.

THE COURT: Have a seat.

Members of the Jury, the laws and the decisions in this state indicate that when a Jury has not been able to agree, the court may give them further instructions.

As sworn jurors in this state, and with the responsibility imposed upon persons selected to serve upon a jury, each juror has a duty to consult with other jurors and to deliberate with a view of reaching an agreement. Each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with fellow jurors. In the course of deliberations, a juror should not hesitate to reexamine his or her own views, and to change his or her opinion if convinced it is erroneous. Lastly, no juror should surrender his or her own convictions as to the weight or effect of the evidence solely because of the opinion of fellow jurors, or for the mere purpose of returning a verdict. As I have said, your verdict must be unanimous to be accepted by this court. Discussion is essential, and it is essential sometimes to reconsider one's own views and to reconsider one's own recollection, as the case may be.

It is to be hoped that this Jury, which appears to be an intelligent, reasonable group of people, could consider the cases and could arrive at a unanimous verdict. As I said before, none of you can be compelled to give up your own honest convictions.

JURY FOREPERSON: Sir, we were just wondering if we were supposed to keep deliberating tonight, or if there was some time limit that you want us to stop and come back tomorrow or Monday.

THE COURT: For fear that it might be construed as some attempt to coerce you, I don't think I can answer that question.

I will have to ask you to go back to the jury room and see if you can reach a verdict.

(At 5:24 o'clock, p.m., the Jury retired to further deliberate.)

THE COURT: Bring the Jury in.

MR. CLIFFORD: May I make some remarks on the record?

Your Honor has stated intentions to, at 6:00 o'clock, declaring mistrial if the Jury hasn't reached a verdict. It is now 6:00 p.m. on September 10, 1982, and the Defendant, Calvin Coviel, requests, at this time, that that procedure not be followed and that the jurors be allowed to continue to deliberate. That if the mistrial is declared, this case has to be tried again. The Defendant is not going to be able to afford the expenses of another trial. That I have conferred with the Court Reporter, and I have found that the transcript, if one is ordered, would cost in excess of $1000. That the attorney's fees for another trial would run in the area of $5,000. That I simply ask the Court to do something else other than to declare this mistrial, either bring the jurors back tonight, tomorrow, or on Monday, to continue to deliberate.

THE COURT: The request of the Defendant has been heard. It's been considered before this time, and it is denied.

Bring the Jury in.

(At 6:00, p.m., the Jury resumed their places in the jury box.)

THE COURT: Madame foreperson, would you mind standing again.

Has the Jury reached a unanimous verdict on the issue as to second degree or mitigating kidnapping?

JURY FOREPERSON: No, sir.

THE COURT: Has the Jury reached a verdict with regard to the charge of attempted strong-armed robbery?

JURY FOREPERSON: No, sir.

THE COURT: Has the Jury reached a verdict with regard to the charge of robbery with a dangerous weapon?

JURY FOREPERSON: No, sir.

THE COURT: Thank you. Have a seat.

Madame clerk, without any reflection upon the person named, it is the requirement of the law that the name of one juror be drawn, and a mistrial declared if the Jury is unable

to agree. It is the opinion of the Court that if the jury was deadlocked at seven to five a few minutes after 5:00 today, that there is a definite possibility that a juror or jurors would have to give up honest convictions in order to arrive at a verdict. Therefore, the Court is going to instruct the clerk to provide for me the name of the juror in seat number 12.

THE CLERK: Teresa Smith.

THE COURT: Ms. Smith, without any reflection at all on you, the Court withdraws Teresa Smith and declares a mistrial in each of the three cases.

Ladies and gentlemen of the Jury, sometimes in your readings or from television trials that you have seen, it appears to be easy. These cases involve several complex or complicated propositions. The law, as you perhaps are aware now, is somewhat difficult to apply to a fact situation. There are cases in which the mind of one person may arrive at a decision, but the minds of 12 persons have difficulty in arriving at a unanimous decision. This is one of the reasons for the provision of jury trials, and the reason for it is to assure or safeguard that a person not be found guilty of a criminal offense unless and until a diverse jury of persons from many places and stations in life are brought together to consider the question presented, and to serve as judges of the facts. I recognize that in these cases, there are certain questions of fact which could give you trouble and could give another jury trouble. I regret that there has been a great deal of expense required thus far. It will mean additional expense to have a jury try these cases again, but it is now necessary that this be done, because I feel it is very important that you not be required to give up your own honest convictions about these cases. For your willingness to serve this week, for the inconvenience and hardship that some of you have experienced, I must express my regret, but I will tell you that if the right of a free society and the right of any individual in the society to remain innocent until proven guilty beyond a reasonable doubt to the satisfaction of 12 persons, if this right is to be preserved and made available to you and me and to anyone else, it is necessary to go through this process.

You will get a check from the clerk later on, and as far as I know, none of you can retire on what you are going to get. If you are called to jury duty within the next two years, please remember that you have served at this time, and insofar as the state courts are concerned, you will not be required to serve on a trial jury or a grand jury, for that matter, within the next two years.

Thank you for your services, and even though we couldn't get the cases decided, I do feel that you made a contribution to the courts, your community, and your state.

(The Jury was excused from further service in this matter.)

The constitutional standard for mistrials in criminal cases that permit the defendants involved to be tried again was laid down by the United States Supreme Court 160 years ago.

[I]n all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. . . .

*United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). As we read it, the record fails to show any necessity, "manifest" or otherwise, for discharging the jury and terminating the trial. And under the law, the record must demonstrate such "necessity" for any mistrial entered over the defendant's objection before the defendant can be tried again; though, of course, the "necessity" that must be shown is practical, not absolute. *Arizona v. Washington*, 434 U.S. 497, 54 L.Ed. 2d 717, 98 S.Ct. 824 (1978). The State argues that defendant did not object to the action taken, but merely "requested that the court not declare a mistrial because of the expense that would be incurred by his family if the case was tried again." We do not so interpret defense counsel's remarks. Furthermore, one reason for banning repeated trials for the same offense in the first place was to pre-

vent people charged with crime from being ruined financially because of the expense and time from business that multiple trials can entail. *Arizona v. Washington, supra.*

Judge Washington's statement that the jury was deadlocked and jurors would have to give up honest convictions in order to arrive at a verdict has no support in the record. All that the record indicates is that the jury was willing to go on with their deliberations even if it meant coming back that night, Saturday, or Monday of the next week; it contains no intimation from them that they were deadlocked and further deliberations would not be productive. The court's misunderstanding about this apparently developed from assuming something that had not been demonstrated. In all events, the record shows that upon being told that the jury had a question about the course to follow in case a verdict was not reached, instead of ascertaining the nature of their problem, the court asked how they stood and gave them the charge that is given deadlocked juries. Whereas, upon their question being finally asked, it had to do with when the deliberations necessary to conclude the case would be done. Nor does the time that the jury had been deliberating justify the assumption that they were deadlocked and unable to finally agree upon a verdict. Three felony counts of some complexity, involving two distinct incidents and complainants, were being tried and that the jury had not reached a verdict after deliberating for approximately four hours, the rest of the time after they received the case being spent in the courtroom, does not require the conclusion that an impasse had been reached.

Furthermore, the law of North Carolina concerning mistrials in criminal cases does not stop with the constitutional standard of "manifest necessity," which for the states is a floor, not a ceiling. In enacting G.S. 15A-1064, a part of Article 62 of Chapter 15A of the General Statutes, "Mistrial," the General Assembly required that "[b]efore granting a mistrial, the judge must make finding of facts with respect to the grounds for the mistrial and insert the findings in the record of the case." This requirement is mandatory. *State v. Johnson,* 60 N.C. App. 369, 299 S.E. 2d 237, *rev. denied,* 308 N.C. 679, 304 S.E. 2d 759 (1983). For a comprehensive discussion of this statutory requirement, see *State v. Jones,* 67 N.C. App. 377, 313 S.E. 2d 808 (1984). No such findings are recorded, the statement made by the judge being in the nature of an

---

---

opinion that the evidence does not warrant. Indeed, the record does not show how the jury stood when the judge decided to discharge them, whether any jurors had changed their positions after the 7 to 5 votes were taken, or what their disposition then was in regard to reaching a verdict, because they were not questioned about any of these matters. ·

We are obliged to hold, therefore, that defendant's second trial for the same offenses violated the double jeopardy clause of the federal constitution and also the North Carolina statutes governing mistrials, and that defendant's motion to terminate the trial appealed from on that ground should have been granted. The judgments of conviction against the defendant are hereby vacated.

Judgments vacated.

Chief Judge VAUGHN and Judge WHICHARD concur.