STATE OF NORTH CAROLINA v. ROBERT CLIFTON WHITLEY.

(Filed 18 June, 1965.)

**1. Indictment and Warrant § 12; Criminal Law § 26—**

An indictment for escape specifying that the escape occurred on a date antecedent the date sentence was imposed is fatally defective on its face, since it avers an impossibility, and therefore the indictment is not subject to amendment as to date, G.S. 15-155, and the trial court's action in withdrawing a juror and ordering a mistrial amounts to a quashal of the indictment, and the circumstances will not support a plea of former jeopardy upon the subsequent trial upon an indictment correctly specifying the respective dates.

**2. Prisons § 2—**

The director of prisons, or his duly authorized agents or representatives, has authority to designate the places of confinement of prisoners within the State prison system. G.S. 148-4.

**3. Escape § 1—**

A prisoner hired by the State Highway Commission to work on the State highways is within the State prison system when an agent of the Commission has been designated to receive and work such prisoner, and therefore the escape of a prisoner from the custody of the gang foreman while working on the public roads is an escape from the State prison system. G.S. 148-45(a).

PETITION for writ of *certiorari* allowed by this Court 23 March 1965.

The petitioner was brought to trial at the October Mixed Session 1964 of the Superior Court of JOHNSTON County upon an indictment reading as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Robert Clifton Whitley, late of the County of Johnston, on the 1 day of June, in the year of our Lord one thousand nine hundred and sixty-three, with force and arms at and in the County aforesaid, while he, the said Robert Clifton Whitley, was then and there lawfully confined in the North Carolina State Prison System in the custody of R. G. Lane, Superintendent of N. C. State Prison Camp #044, and while then and there serving a sentence for the crime of Breaking and entering and Larceny, a misdemeanor, under the laws of the State of North Carolina, imposed at the January 22, 1964, Term of the Superior Court of Wake County, then and there did unlawfully, willfully, and feloniously escape from the said R. G. Lane, Superintendent, this being his second offense, having been convicted of escape at the April 14, 1964, Term of the Selma District Recorder's Court, Johnston County,

North Carolina, against the form of the statute in such case made
and provided and against the peace and dignity of the State."

The petitioner entered a plea of not guilty to the charge. After the
jury was sworn and impaneled to make true deliverance in the case, it
was called to the attention of the lower court that the indictment should
have alleged that the offense occurred on 1 June 1964 instead of on 1
June 1963. Defendant's counsel objected· to the amendment of the bill
.of indictment, which objection was sustained by the court. Whereupon,
the court in its discretion withdrew a juror and ordered a mistrial.

After the mistrial was ordered on the original bill of indictment, the
solicitor sent another bill to the grand jury at the October Mixed Ses-
sion 1964, charging the petitioner with feloniously escaping from the
State prison system on 1 June 1964, and a true bill was returned at
said October Session, this bill of indictment being identical with the
first bill except as to the date on which the escape is alleged to have
occurred.

The petitioner was brought to trial on the second bill of indictment
at the December Criminal Session 1964 of the Superior Court of John-
ston County. He entered a plea of former jeopardy, which was denied.
He then entered a plea of not guilty. From the conviction and judgment
entered at the December Mixed Session 1964 of the Superior Court of
Johnston County, the petitioner gave notice of appeal to the Supreme
Court. The appeal was not perfected. Later, court-appointed counsel
filed a petition for writ of *certiorari*, seeking a review of the trial below.
The writ was allowed.

*Attorney General Bruton, Staff Attorney Theodore C. Brown, Jr.,
for the State.*
*Wallace Ashley, Jr., for petitioner.*

DENNY, C.J.   In our opinion, the petitioner raises only two ques-
tions that merit discussion and determination. (1)   Did the lower
court commit error in denying petitioner's plea of former jeopardy?
(2)   Does escape by a prisoner from the custody of a gang foreman
employed by the North Carolina State Highway Commission while at
work on the public roads, constitute "escape from the State prison sys-
tem" within the meaning of G.S. 148-45(a)?

The pertinent part of G.S. 148-45(a) reads as follows:

"Any prisoner serving a sentence imposed upon conviction of a
misdemeanor who escapes or attempts to escape from the State
prison system shall for the first such offense be guilty of a misde-
meanor and, upon conviction thereof, shall be punished by im-

prisonment for not less than three months nor more than one year. Any prisoner serving a sentence imposed upon conviction of a felony who escapes or attempts to escape from the State prison system shall for the first such offense be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than six months nor more than two years. Any prisoner convicted of escaping or attempting to escape from the State prison system who at any time subsequent to such conviction escapes or attempts to escape therefrom shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than six months nor more than three years. * * *"

In *S. v. Jordan,* 247 N.C. 253, 100 S.E. 2d 497, in pointing out the defects in the bill of indictment involving escape, Bobbitt, J., speaking for the Court, said:

"We do not undertake on this appeal to specify the exact averments prerequisite to a valid warrant or bill of indictment based on G.S. 148-45. Suffice to say, the bill of indictment on which defendant was tried is fatally defective. There is no averment of any kind, even in general terms that the alleged escape of January 9, 1957, occurred while defendant was serving a sentence imposed upon his conviction of any criminal offense. In order to charge the offense *substantially in the language* of G.S. 148-45, it would be necessary to allege that the escape or attempted escape occurred when defendant was serving a sentence imposed upon conviction of a misdemeanor or of a felony, irrespective of whether the presently alleged escape or attempted escape is alleged to be a first or a second offense. * * *

"It is noted that arrest of judgment on the ground that the bill of indictment is fatally defective does not bar further prosecution for a violation of G.S. 148-45, if the solicitor deems it advisable to proceed on a new bill. * * *"

The petitioner was charged in the original bill of indictment with having escaped on 1 June 1963 while serving a sentence imposed in January 1964, which sentence was imposed nearly eight months after the date the petitioner is alleged to have escaped.

We are not inadvertent to the provisions of G.S. 15-155 with respect to dates in a bill of indictment, and if the date of the alleged escape had been after the petitioner had been committed to prison and while he was serving a prison sentence pursuant to such commitment, although the alleged date of the escape was erroneous, the indictment would not be defective by reason of the insertion of such erroneous date. However,

where the indictment on its face negatives any possibility of a showing that at the time of the alleged escape the petitioner was serving a sentence in prison, we think such indictment was fatally defective, that the action of the court below in ordering a mistrial was tantamount to quashing the bill of indictment, which the trial court had the right to do *ex mero motu,* and that the petitioner's conviction on the second bill of indictment is valid and the plea of former jeopardy was properly overruled.

Unquestionably, G.S. 148-4 gives the Director of Prisons or his duly authorized agents or representatives the authority to designate the places of confinement within the State prison system where the sentences of prisoners shall be served. This statute expressly provides:

> "* * * Employees of departments, institutions, agencies, and political subdivisions of the State hiring prisoners to perform work outside prison confines may be designated as the authorized agents of the Director of Prisons for the purpose of maintaining control and custody of prisoners who may be placed under the supervision and control of such employees, including guarding and transferring such prisoners from place to place in the State as their duties might require, and apprehending and arresting escaped prisoners and returning them to prison. * * *"

Certainly, prisoners hired by the State Highway Commission to work on the highways of the State are within the prison system when the agents of the Highway Commission have been designated to receive and work such prisoners. Likewise, G.S. 148-6 provides in substance that convicts after their commitment to the Prison Department remain under the actual management, control and care of the department, and this applies to convicts employed on farms of the State, or elsewhere or otherwise.

It is also prescribed in G.S. 148-26 (e): "* * * All contracts for the employment of prisoners shall provide that they shall be fed, clothed, quartered, guarded, and otherwise cared for by the Prison Department."

We think the second question posed must be answered in the affirmative. We assume that the State established the fact that the party or parties having custody of the prisoners, including the defendant at the time he escaped, were agents of the Prison Department. The record before us does not contain the evidence adduced in the trial below, therefore, it will be presumed that the evidence was sufficient to support the verdict.

In the trial below, we find

No error.