TYSON, Judge.
 

 *335
 
 Leonard Paul Schalow ("Defendant") appeals from judgment entered after a jury convicted him of attempted first-degree murder in 15 CRS 50922. We vacate Defendant's indictment, conviction, and judgment entered thereon.
 

 The original indictment in 14 CRS 50887 was not fatally defective and sufficiently alleged attempted voluntary manslaughter. No manifest necessity existed to declare a mistrial after the jury had been impaneled, and jeopardy attached under the indictment in 14 CRS 50887. Defendant's subsequent indictment, prosecution, and conviction in 15 CRS 50992 violated his constitutional right against double jeopardy. U.S. Const. amend. V ; N.C. Const. art. I, § 19.
 

 *336
 

 I. Background
 

 A. Facts
 

 Erin Henry Schalow and Defendant were married in 1997 and moved to North Carolina in 2010. Two years later, Mrs. Schalow was hired as a nurse at a long-term adult care facility located in Brevard. Defendant was not working at the time the incidents occurred.
 

 Mrs. Schalow testified Defendant assaulted her almost daily from December 2013 to February 2014. Defendant kicked her with hard-toe boots; hit her with walking sticks and an aluminum crutch; and strangled her into unconsciousness at least three times. Defendant also attacked her with a knife at least two times. One of those attacks and injuries caused her to seek medical attention. Many times, their minor son was present in the next room during these attacks.
 

 Mrs. Schalow also testified Defendant threatened to torture and kill her. Defendant told her to "make my peace with [their] son and make sure [she] could be there as much as possible for him in the short-term" because he was going to torture and kill her over an extended period of time.
 

 Mrs. Schalow's supervisor and co-workers noticed and inquired about her injuries. Mrs. Schalow explained her injuries were from falling down stairs, slamming her hand in a car door, or running into a wall. Her co-workers did not believe these explanations, and eventually Mrs. Schalow confided to one co-worker that Defendant had hit her.
 

 In late February 2014, Mrs. Schalow arrived at work bleeding from her temple and mouth, both of her eyes were blackened and swollen, her jaw was so swollen she could not talk, and she experienced difficulty walking. At this point, her supervisor called the police.
 

 Henderson County Sheriff's Detective Dottie Parker interviewed Mrs. Schalow, who
 
 *570
 
 stated her husband had beaten her the night before. When Detective Parker observed Mrs. Schalow's injuries, she advised her to go the hospital immediately. Mrs. Schalow was admitted to the hospital with extensive injuries. She remained inpatient at the hospital for three weeks.
 

 B. Procedural History
 

 Defendant was charged and indicted for attempted murder of Mrs. Schalow in 14 CRS 50887. The caption of that indictment identified the offense charged as "Attempt First Degree Murder." The body of
 
 *337
 
 the indictment alleged "the defendant named above unlawfully, willfully and feloniously did attempt to murder and kill Erin Henry Schalow."
 

 The cause in 14 CRS 50887 was called for trial on 17 March 2015, the jury was impaneled, and the State presented evidence against Defendant. After the jury was excused following the first day of trial, Judge Powell alerted the parties to the fact the indictment failed to allege "with malice aforethought" as required to charge attempted first-degree murder under the short-form indictment statute,
 
 N.C. Gen. Stat. § 15-144
 
 . The court cited
 
 State v. Bullock
 
 ,
 
 154 N.C.App. 234
 
 , 243-45,
 
 574 S.E.2d 17
 
 , 23-24 (2002),
 
 appeal dismissed, disc. review denied
 
 ,
 
 357 N.C. 64
 
 ,
 
 579 S.E.2d 396
 
 ,
 
 cert. denied
 
 ,
 
 540 U.S. 928
 
 ,
 
 124 S.Ct. 338
 
 ,
 
 157 L.Ed.2d 231
 
 (2003), in which a similar error was made in an initial indictment for attempted first-degree murder. Judge Powell announced he would hear arguments on the validity of the indictment the following morning.
 

 The next morning, the State requested that Judge Powell dismiss the indictment as defective, in order to allow the State to re-indict Defendant in a bill which properly charged attempted murder. Defendant offered up a memorandum of law; repeatedly asserted that jeopardy had attached; and, argued dismissal by the trial court would be improper. Defendant also argued the indictment properly charged the lesser-included offense of attempted voluntary manslaughter and was not fatally defective. Defendant cited
 
 State v. Bullock
 
 in support of his position asserting the indictment effectively charged attempted voluntary manslaughter.
 
 Id
 
 .
 

 After hearing arguments from the parties, Judge Powell ruled the indictment was fatally defective and the court had not acquired jurisdiction to try the case. He dismissed the indictment and declared a mistrial. Defendant objected to this ruling.
 

 Defendant was subsequently re-indicted in 15 CRS 50922 on 18 May 2015. As with 14 CRS 50887, the caption of 15 CRS 50922 identified the charged offense as "Attempt First Degree Murder." This indictment alleged "the defendant named above unlawfully, willfully and feloniously did
 
 with malice aforethought
 
 attempt to murder and kill Erin Henry Schalow by torture." (emphasis supplied). A box checked on the indictment in 15 CRS 50922 indicated it was a "superseding indictment."
 

 On 22 May 2015, Defendant filed a motion to dismiss 15 CRS 50922, along with a supporting memorandum of law. In his motion and memorandum, Defendant argued his prosecution in 15 CRS 50922 was barred by the double jeopardy protections in the Fifth Amendment to the Constitution of the United States and Article I, Section 19 of the North Carolina Constitution.
 

 *338
 
 Defendant's motion and memorandum addressed and asserted three related grounds. First, there was no fatal defect or variance in the indictment in 14 CRS 50887. Second, the trial court in 14 CRS 50887 abused its discretion in declaring a mistrial. Finally, Defendant argued once jeopardy attached on the dismissed indictment for attempted voluntary manslaughter in 14 CRS 50887, the Double Jeopardy Clause prohibited Defendant from being prosecuted again for the greater offense of attempted murder.
 

 On 4 June 2015, Judge Thornburg conducted a hearing on Defendant's double jeopardy motion and denied Defendant's motion to dismiss. A written order was entered on 10 June 2015. Judge Thornburg found Judge Powell had correctly determined the indictment in 14 CRS 50887 was fatally defective and did not abuse his discretion in dismissing the indictment and declaring a mistrial at the previous trial. Judge Thornburg concluded "the law is settled that there is no double jeopardy bar to a second trial when a charge
 
 *571
 
 is dismissed because an indictment ... is defective."
 

 Prior to his second trial, Defendant filed a motion for temporary stay and petition for writ of supersedeas. He requested this Court to stay the proceedings until it resolved the issues in Defendant's contemporaneously filed petition for writ of certiorari. Defendant's writ of certiorari requested this Court to stay and reverse Judge Thornburg's orders denying Defendant's motion to dismiss and habeas relief. Defendant again asserted the double jeopardy provisions of the North Carolina Constitution and the Constitution of the United States prohibited further prosecution of him pursuant to the new indictment. This Court allowed and entered the temporary stay, but later denied Defendant's petitions and dissolved the stay "without prejudice to his right to seek relief on appeal from the final judgment."
 

 At the second trial, Defendant again asserted his double jeopardy defense at the outset, and renewed his motion to dismiss on double jeopardy grounds after the close of the evidence. The trial court denied the renewed motion to dismiss.
 

 The jury convicted Defendant of attempted first-degree murder with both premeditation and deliberation and by torture. Defendant was sentenced to a minimum term of 157 months and a maximum term of 201 months. Defendant appeals.
 

 *339
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court as of right from a final judgment in a superior court. N.C. Gen. Stat. § 7A-27(b)(1) (2015).
 

 III. Issues
 

 Defendant first argues jeopardy attached when the trial court dismissed the original indictment in 14 CRS 50887 and declared a mistrial absent any manifest necessity, and over Defendant's objection.
 

 Defendant also argues the trial court erred in the subsequent trial by: (1) denying his motion to dismiss at the close of the State's evidence, where the evidence failed to show he committed any overt act with the intent to kill Mrs. Schalow; (2) allowing Detective Parker's testimony that she had elevated the charges against Defendant from assault to attempted murder; and, (3) failing to intervene
 
 ex mero motu
 
 when the prosecutor argued "a lot of thought" went into the decision to charge Defendant with attempted first-degree murder.
 

 IV. Standard of Review
 

 This Court reviews indictments alleged to be facially invalid
 
 de novo
 
 .
 
 State v. Haddock
 
 ,
 
 191 N.C. App 474
 
 , 476,
 
 664 S.E.2d 339
 
 , 342 (2008). Facially invalid indictments deprive the trial court of jurisdiction to enter judgment in criminal cases.
 
 Id
 
 . This Court also reviews double jeopardy issues
 
 de novo
 
 .
 
 State v. Baldwin
 
 ,
 
 240 N.C.App. 413
 
 , 415,
 
 770 S.E.2d 167
 
 , 170 (2015). A trial court's decision to declare a mistrial due to manifest necessity is reviewed for abuse of discretion.
 
 State v. Sanders
 
 ,
 
 347 N.C. 587
 
 , 595,
 
 496 S.E.2d 568
 
 , 573 (1998).
 

 V. Sufficiency of an Indictment
 

 The State asserts the original indictment in 14 CRS 50887 was fatally defective, because it failed to allege any charge against Defendant. As such, the State argues the indictment did not confer jurisdiction upon the trial court and Defendant's constitutional right to be protected from double jeopardy was not violated. We disagree.
 

 The Constitution of North Carolina provides: "no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment." N.C. Const. art. 1, § 22. Our Supreme Court has held:
 

 [a]n indictment or criminal charge is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution
 
 *340
 
 for the same offense. The indictment must also enable the court to know what judgment to pronounce in the event of conviction.
 

 State v. Coker
 
 ,
 
 312 N.C. 432
 
 , 434-35,
 
 323 S.E.2d 343
 
 , 346 (1984) ;
 
 see
 

 Haddock
 
 ,
 
 191 N.C. App at 476-77
 
 ,
 
 664 S.E.2d at 342
 
 . Generally, courts do not favor quashing an indictment.
 
 State v. Greer
 
 ,
 
 238 N.C. 325
 
 , 327,
 
 77 S.E.2d 917
 
 , 919 (1953) ;
 
 see
 

 N.C. Gen. Stat. § 15-153
 
 (2015) ("[The indictment] shall not
 
 *572
 
 be quashed ... by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment.").
 

 A. Short-form Indictment for Attempted Voluntary Manslaughter
 

 The North Carolina General Assembly statutorily authorized short-form indictments to provide "a method by which indictments can be certain to be sufficient to withstand constitutional challenges."
 
 State v. McKoy
 
 ,
 
 196 N.C.App. 650
 
 , 656,
 
 675 S.E.2d 406
 
 , 411 (2009),
 
 appeal dismissed and disc. review denied
 
 ,
 
 363 N.C. 586
 
 ,
 
 683 S.E.2d 215
 
 (2009).
 
 N.C. Gen. Stat. § 15-144
 
 sets out the requirements for short-form indictments for murder and manslaughter:
 

 it is sufficient in describing
 
 murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder
 
 (naming the person killed), and concluding as is now required by law; and it is sufficient in describing
 
 manslaughter to allege that the accused feloniously and willfully did kill and slay
 
 (naming the person killed), and concluding as aforesaid; and any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for murder or manslaughter, as the case may be.
 

 N.C. Gen. Stat. § 15-144
 
 (2015) (emphasis supplied).
 

 In
 
 State v. Jones
 
 ,
 
 359 N.C. 832
 
 , 837-38,
 
 616 S.E.2d 496
 
 , 499 (2005), our Supreme Court considered whether
 
 N.C. Gen. Stat. § 15-144
 
 also permitted the use of a short-form indictment as sufficient to allege attempted first-degree murder. The Supreme Court considered
 
 N.C. Gen. Stat. § 15-144
 
 in conjunction with
 
 N.C. Gen. Stat. § 15-170
 
 .
 
 Id
 
 .
 
 N.C. Gen. Stat. § 15-170
 
 provides a defendant "may be convicted of the crime charged therein or of a less degree of the same crime,
 
 or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime
 
 ."
 
 N.C. Gen. Stat. § 15-170
 
 (2015) (emphasis supplied).
 

 *341
 
 The
 
 Jones
 
 Court noted that
 
 N.C. Gen. Stat. § 15-170
 
 was relevant because "it reflects the General Assembly's judgment that, for purposes of the indictment requirement, attempt is generally treated as a subset of the completed offense."
 
 Jones
 
 ,
 
 359 N.C. at 837
 
 ,
 
 616 S.E.2d at 499
 
 . The Court held
 
 N.C. Gen. Stat. § 15-144
 
 implicitly authorizes the State to use a short-form indictment to charge attempted first-degree murder. Based upon the principles in
 
 Jones
 
 , the State could properly use a short-form indictment to charge attempted voluntary manslaughter as a standalone offense, or as a lesser included offense to murder.
 
 See
 

 id
 
 .
 

 B. Sufficiency of this Indictment under
 
 State v. Bullock
 

 Defendant argues, while the original indictment omitted the words "with malice aforethought" and failed to properly assert attempted first-degree murder, the language in the original indictment was sufficient to allege the charge of attempted voluntary manslaughter. We agree.
 

 In
 
 Bullock
 
 , the defendant was tried and convicted on attempted first-degree murder.
 
 Bullock
 
 ,
 
 154 N.C.App. at 236
 
 ,
 
 574 S.E.2d at 18
 
 . His indictment for attempted first-degree murder stated: "[t]he jurors for the State upon their oath present that on or about the date of the offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did attempt to kill and murder Yvonne Bullock."
 
 Id
 
 . at 244,
 
 574 S.E.2d at 23
 
 . On appeal, the defendant argued the short-form indictment for attempted murder failed to allege "malice aforethought" as expressly required by
 
 N.C. Gen. Stat. § 15-144
 
 .
 
 Id
 
 . at 244,
 
 574 S.E.2d at 24
 
 .
 

 This Court agreed the indictment failed to properly allege attempted first-degree murder, but found that "the indictment sufficiently allege[d] a lesser-included offense."
 
 Id
 
 . at 245,
 
 574 S.E.2d at 24
 
 . This Court clarified the
 
 Bullock
 
 indictment sufficiently alleged attempted voluntary manslaughter, as voluntary manslaughter "consists of an unlawful killing without malice, premeditation or deliberation."
 
 Id
 
 . As such, this Court did not vacate the indictment in
 
 Bullock
 
 , but held the proper remedy was to remand the case for resentencing on the lesser-included offense
 
 *573
 
 of attempted voluntary manslaughter and entry of judgment thereupon.
 
 Id
 
 .
 

 In
 
 State v. Yang
 
 ,
 
 174 N.C.App. 755
 
 , 763,
 
 622 S.E.2d 632
 
 , 647 (2005),
 
 disc. review denied
 
 ,
 
 360 N.C. 296
 
 ,
 
 628 S.E.2d 12
 
 (2006), this Court relied on
 
 Bullock
 
 to hold the defendant's indictment, which insufficiently alleged attempted first-degree murder, was sufficient to allege attempted voluntary manslaughter. The
 
 Yang
 
 court explained that
 
 Bullock
 
 held "the indictment [in
 
 Bullock
 
 ] did sufficiently allege the lesser-included offense of attempted voluntary manslaughter, notwithstanding the lack of the phrase 'malice aforethought.' "
 
 Id
 
 .
 

 *342
 
 More recently in
 
 Wilson
 
 , this Court relied on
 
 Bullock
 
 to remand the defendant's case for resentencing on attempted voluntary manslaughter, where the indictment failed to allege attempted first-degree murder, but stated "the defendant named above unlawfully, willfully and feloniously did attempt to murder Timothy Lynch."
 
 State v. Wilson
 
 ,
 
 236 N.C.App. 472
 
 , 474-75,
 
 762 S.E.2d 894
 
 , 895-96 (2014).
 

 Had this Court concluded, in either
 
 Bullock
 
 or
 
 Wilson
 
 , the underlying indictments did not sufficiently allege any offense and were fatally defective, the trial court would have lacked jurisdiction to hear or impose sentences in either case. The appropriate remedy would have been to vacate both defendants' convictions, and not to remand for resentencing consistent with the lesser-included offense of attempted voluntary manslaughter.
 

 The original indictment in 14 CRS 50887 failed to sufficiently allege attempted first-degree murder. However, had the trial proceeded and the impaneled jury returned a guilty verdict on attempted first-degree murder, as in
 
 Bullock
 
 and
 
 Wilson,
 
 that indictment would have supported a conviction and judgment sentencing Defendant of attempted voluntary manslaughter.
 
 See
 

 Bullock
 
 ,
 
 154 N.C.App. at 245
 
 ,
 
 574 S.E.2d at
 
 24 ;
 
 Wilson
 
 ,
 
 236 N.C.App. at 474-75
 
 ,
 
 762 S.E.2d at 895-96
 
 .
 

 Additionally, the original indictment apprised Defendant of the charges against him with sufficient certainty to enable him to prepare his defense.
 
 See
 

 Coker
 
 ,
 
 312 N.C. at 434-35
 
 ,
 
 323 S.E.2d at 346
 
 . Defendant expressly objected to the mistrial and dismissal of the indictment in 14 CRS 50887. Defendant was prepared to proceed with the trial on the issue of attempted voluntary manslaughter and requested the trial court to proceed on that charge. Once the State's failure to allege "with malice aforethought" in the original indictment in 14 CRS 50887 was discovered and communicated by Judge Powell, the court should have required the State to dismiss the charge against Defendant or to proceed with the trial on attempted voluntary manslaughter.
 
 See
 

 State v. Etheridge
 
 ,
 
 319 N.C. 34
 
 , 50,
 
 352 S.E.2d 673
 
 , 683 (1987).
 

 The indictment also enabled "the court to know what judgment to pronounce in the event of conviction."
 
 Coker
 
 ,
 
 312 N.C. at 434-35
 
 ,
 
 323 S.E.2d at 346
 
 . Judge Powell was aware of this Court's holding in
 
 Bullock
 
 and cited it upon realizing the omission of "with malice aforethought" in the original indictment.
 
 See
 

 Bullock
 
 ,
 
 154 N.C.App. at 244
 
 ,
 
 574 S.E.2d at 24
 
 . Based upon
 
 Bullock
 
 and
 
 Wilson
 
 , had the trial proceeded on the original indictment in 14 CRS 50887, the jury's conviction thereon would have supported a judgment and sentence of attempted voluntary
 
 *343
 
 manslaughter.
 
 See
 

 id
 
 . at 245,
 
 574 S.E.2d at
 
 24 ;
 
 Wilson
 
 ,
 
 236 N.C.App. at 474-75
 
 ,
 
 762 S.E.2d at 895-96
 
 .
 

 Under
 
 de novo
 
 review, the original indictment in 14 CRS 50887 was constitutionally and statutorily sufficient to invoke jurisdiction, allege attempted voluntary manslaughter, and was not fatally defective.
 
 See
 

 id
 
 . Since the indictment sufficiently alleged an offense upon which trial could have properly proceeded to judgment, it was error for the trial court to have concluded otherwise in 14 CRS 50887. This error was compounded in 15 CRS 50992 when, after the hearing of Defendant's double jeopardy motion, Judge Thornburg denied Defendant's motion to dismiss the indictment and concluded Judge Powell had "validly ruled the indictment was defective."
 

 VI. Double Jeopardy
 

 With our determination that the indictment in 14 CRS 50887 was not fatally defective,
 
 *574
 
 we turn to whether the trial court erred in dismissing the indictment and declaring a mistrial based on manifest necessity, and the double jeopardy implications of that action.
 

 The Fifth Amendment of the Constitution of the United States provides,
 

 No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger;
 
 nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb
 
 ; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
 

 U.S. Const. amend. V (emphasis supplied).
 

 "It is a fundamental principle of the common law, guaranteed by our Federal and State Constitutions, that no person may be twice put in jeopardy of life or limb for the same offense."
 
 State v. Shuler
 
 ,
 
 293 N.C. 34
 
 , 42,
 
 235 S.E.2d 226
 
 , 231 (1977) (citing U.S. Const. amend. V ; N.C. Const. art. I, § 19 ;
 
 State v. Cutshall
 
 ,
 
 278 N.C. 334
 
 ,
 
 180 S.E.2d 745
 
 (1971) ).
 

 In a criminal prosecution, jeopardy attaches when a jury is impaneled to try a defendant on a valid bill of indictment.
 
 Id
 
 . ;
 

 *344
 

 Cutshall
 
 ,
 
 278 N.C. at 344
 
 ,
 
 180 S.E.2d at 751
 
 . Once jeopardy attaches, it protects "a defendant from additional punishment and successive prosecution for the same criminal offense."
 
 State v. Sparks
 
 ,
 
 362 N.C. 181
 
 , 186,
 
 657 S.E.2d 655
 
 , 658-59 (2008) (citation and quotation marks omitted);
 
 see
 

 Gilliam v. Foster
 
 ,
 
 75 F.3d 881
 
 , 893 (4th Cir. 1996),
 
 cert. denied
 
 ,
 
 517 U.S. 1220
 
 ,
 
 116 S.Ct. 1849
 
 ,
 
 134 L.Ed.2d 950
 
 (1996) ("Among the protections provided by [the Double Jeopardy Clause] is the assurance that a criminal defendant will not be subjected to repeated prosecutions for the same offense." (citation and quotation marks omitted)).
 

 While "the primary purpose of the Double Jeopardy Clause was to protect the integrity of a final judgment," a separate body of double jeopardy law also protects a defendant's interest "in avoiding multiple prosecutions even where no final determination of guilt or innocence has been made."
 
 United States v. Scott
 
 ,
 
 437 U.S. 82
 
 , 92,
 
 98 S.Ct. 2187
 
 , 2194,
 
 57 L.Ed.2d 65
 
 , 74-75,
 
 reh'g denied
 
 ,
 
 439 U.S. 883
 
 ,
 
 99 S.Ct. 226
 
 ,
 
 58 L.Ed.2d 197
 
 (1978). These protected interests arise in two situations: (1) when the trial court declares a mistrial, and (2) when the trial court terminates the proceedings in favor of the defendant on a basis that is not related to factual guilt or innocence.
 
 Id
 
 . ;
 
 see
 

 State v. Priddy
 
 ,
 
 115 N.C.App. 547
 
 , 551,
 
 445 S.E.2d 610
 
 , 613,
 
 disc. review denied
 
 ,
 
 337 N.C. 805
 
 ,
 
 449 S.E.2d 751
 
 (1994).
 

 This separate body of law under the Double Jeopardy Clause protects the defendant's "valued right" to have a particular tribunal to decide guilt or innocence, once jeopardy attaches.
 
 Gilliam
 
 ,
 
 75 F.3d at 893
 
 . As the Supreme Court of the United States has held:
 

 The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.
 

 Arizona v. Washington,
 

 434 U.S. 497
 
 , 503-05,
 
 98 S.Ct. 824
 
 , 829-30,
 
 54 L.Ed.2d 717
 
 , 727-28 (1978) (footnotes omitted).
 

 In 14 CRS 50887, jeopardy attached once the jury was duly impaneled under a valid indictment to try the case.
 
 See
 

 *345
 

 Shuler
 
 ,
 
 293 N.C. at 42
 
 ,
 
 235 S.E.2d at 231
 
 . Neither the State nor Defendant contends otherwise. Since the trial court's order did not constitute a "final determination of guilt or innocence," we analyze Defendant's double jeopardy claims under the separate body of double jeopardy law discussed in
 
 Scott
 
 .
 
 *575
 

 Scott
 
 ,
 
 437 U.S. at 92
 
 , 98 S.Ct. at 2194,
 
 57 L.Ed.2d at 74-75
 
 .
 

 A. Trial Court's Declaration of a Mistrial
 

 The trial court's order in 14 CRS 50887 stated: "I find that because the indictment is defective that the Court has no jurisdiction to try this case. And I dismiss the indictment.... I would find there's a manifest necessity that because the indictment is dismissed that a mistrial be declared." The briefs and arguments of both the State and Defendant proceed from the premise that the trial court's order functioned as a mistrial.
 

 In their briefs and oral arguments to this Court regarding double jeopardy, the State and Defendant only argued whether manifest necessity existed for the trial court to declare a mistrial.
 
 See
 

 Lee v. United States
 
 ,
 
 432 U.S. 23
 
 , 32,
 
 97 S.Ct. 2141
 
 , 2146,
 
 53 L.Ed.2d 80
 
 , 88 (1977). We begin with the premise that, although the trial court both dismissed the indictment as defective and declared a mistrial, the court's order ultimately functioned as a mistrial and the manifest necessity analysis applies.
 

 1.
 
 Lee v. United States
 
 and
 
 Illinois v. Somerville
 

 In
 
 Lee v. United States
 
 , the Supreme Court reviewed an appeal in which the district court granted the defendant's motion to dismiss for failure of the indictment to charge either knowledge or intent as required by statute.
 
 Id
 
 . at 25-26,
 
 97 S.Ct. at 2143
 
 ,
 
 53 L.Ed.2d at 84-85
 
 . The district court's dismissal did not include any finding regarding the defendant's guilt or innocence.
 
 Id
 
 . at 29,
 
 97 S.Ct. at 2145
 
 ,
 
 53 L.Ed.2d at 86
 
 . In determining whether this order functioned as a "dismissal" or a "declaration of a mistrial" for the purposes of its double jeopardy analysis, the Court held that a trial court's label of its action is not determinative.
 
 Id
 
 . at 29-30,
 
 97 S.Ct. at 2145
 
 ,
 
 53 L.Ed.2d at 86-87
 
 . Rather, "[t]he critical question is whether the order contemplates an end to all prosecution of the defendant for the offense charged. A mistrial ruling invariably rests on grounds consistent with reprosecution, while a dismissal may or may not do so."
 
 Id
 
 . at 30,
 
 97 S.Ct. at 2145
 
 ,
 
 53 L.Ed.2d at 87
 
 .
 

 The Supreme Court noted the indictment's failure to sufficiently allege the offense as required by statute, "like any prosecutorial or judicial error that necessitates a mistrial, was one that could be avoided-absent any double jeopardy bar-by beginning anew the prosecution of the defendant."
 
 Id
 
 . The district court's dismissal of the indictment
 
 *346
 
 plainly contemplated the State would re-indict the defendant at a later date.
 
 Id
 
 . at 30-31,
 
 97 S.Ct. at 2145-46
 
 ,
 
 53 L.Ed.2d at 87
 
 . Based on this reasoning, the Supreme Court held:
 

 the order entered by the District Court was functionally indistinguishable from a declaration of mistrial.
 

 We conclude that the distinction between dismissals and mistrials has no significance in the circumstances here presented and that established double jeopardy principles governing the permissibility of retrial after a declaration of mistrial are fully applicable.
 

 Id
 
 . at 31,
 
 97 S.Ct. at 2146
 
 ,
 
 53 L.Ed. 2d at 87-88
 
 . (footnote omitted).
 

 In
 
 Lee
 
 , the Supreme Court referenced a similar Supreme Court case where it upheld a trial court's declaration of a mistrial over the defendant's objection due to a fatal defect in the indictment.
 
 Lee
 
 ,
 
 432 U.S. at
 
 31 n.9,
 
 97 S.Ct. at
 
 2146 n.9,
 
 53 L.Ed.2d at
 
 87 ;
 
 see
 

 Illinois v. Somerville
 

 410 U.S. 458
 
 , 459,
 
 93 S.Ct. 1066
 
 , 1068,
 
 35 L.Ed.2d 425
 
 , 428 (1973) (holding there was manifest necessity to declare a mistrial). The Court in
 
 Lee
 
 noted "[t]here is no reason to believe that
 
 Somerville
 
 would have been analyzed differently if the trial judge, like the District Court here, had labeled his action a 'dismissal' rather than a mistrial."
 
 Lee
 
 ,
 
 432 U.S. at
 
 31 n.9,
 
 97 S.Ct. at
 
 2146 n.9,
 
 53 L.Ed.2d at 87
 
 . Furthermore, a subsequent Supreme Court case recognized that "
 
 Lee
 
 demonstrated that, at least in some cases, the dismissal of an indictment may be treated on the same basis as the declaration of a mistrial."
 
 Scott
 
 ,
 
 437 U.S. at 94
 
 , 98 S.Ct. at 2196,
 
 57 L.Ed.2d at 76
 
 .
 

 2. Trial Court's Order in 14 CRS 50887
 

 In terminating the proceeding in 14 CRS 50887, the trial court labeled its actions as both a dismissal of a defective indictment for lack of jurisdiction, as in
 
 Lee
 
 , and a declaration of a mistrial, as in
 
 Somerville
 
 . Whatever
 
 *576
 
 the label, the trial court's decision to terminate the proceedings did not "contemplate[ ] an end to all prosecution," but was based upon the erroneous belief the indictment did not invoke jurisdiction and the State could constitutionally re-indict Defendant at a later date.
 
 Lee
 
 ,
 
 432 U.S. at 30
 
 ,
 
 97 S.Ct. at 2145
 
 ,
 
 53 L.Ed.2d at 87
 
 . Based on
 
 Lee
 
 , its analysis of
 
 Somerville
 
 , and as subsequently recognized in
 
 Scott
 
 , a dismissal of a defective indictment may be treated as a mistrial.
 
 Id
 
 . at 31,
 
 97 S.Ct. at 2146
 
 ,
 
 53 L.Ed.2d at
 
 86-87 ;
 
 see
 

 Somerville
 
 ,
 
 410 U.S. at 459
 
 ,
 
 93 S.Ct. at 1068
 
 ,
 
 35 L.Ed.2d at
 
 428 ;
 
 Scott
 
 ,
 
 437 U.S. at 94
 
 , 98 S.Ct. at 2195,
 
 57 L.Ed.2d at 76
 
 . Whether we ultimately review the trial court's order as a dismissal or a mistrial, the "double jeopardy principles governing
 
 *347
 
 the permissibility of retrial after a declaration of mistrial are fully applicable" in this case.
 
 See
 

 id
 
 .
 

 B. Mistrials and Manifest Necessity
 

 The United States Court of Appeals for the Fourth Circuit has explained:
 

 if a criminal proceeding is terminated by mistrial without a final resolution of guilt or innocence, a defendant may be retried in certain circumstances. When a defendant seeks or consents to the grant of a mistrial, there is no bar to his later retrial.
 
 But, when a defendant opposes the grant of a mistrial, he may not be retried unless there was a manifest necessity for the grant of the mistrial or the failure to grant the mistrial would have defeated the ends of justice
 
 .
 

 Gilliam
 
 ,
 
 75 F.3d at 893
 
 . (emphasis supplied) (citations and footnotes omitted).
 

 North Carolina courts have also recognized an order of mistrial after jeopardy has attached may only be entered over the defendant's objection where "manifest necessity" exists.
 
 State v. Odom
 
 ,
 
 316 N.C. 306
 
 , 310,
 
 341 S.E.2d 332
 
 , 334 (1986) ;
 
 State v. Jones
 
 ,
 
 67 N.C.App. 377
 
 , 381,
 
 313 S.E.2d 808
 
 , 811-812,
 
 disc. review denied
 
 ,
 
 315 S.E.2d 699
 
 (1984). If a mistrial results from manifest necessity, double jeopardy does not bar the State from retrying the defendant on the same offense.
 
 Odom
 
 ,
 
 316 N.C. at 310
 
 ,
 
 341 S.E.2d at 334
 
 . However, if manifest necessity does not exist and "the order of mistrial has been improperly entered over a defendant's objection, defendant's motion for dismissal at a subsequent trial on the same charges must be granted."
 
 Id
 
 . (citations omitted);
 
 see
 

 Gilliam
 
 ,
 
 75 F.3d at 895
 
 .
 

 "Whether a grant of a mistrial is manifestly necessary is a question that turns on the facts presented to the trial court."
 
 Gilliam
 
 ,
 
 75 F.3d at 895
 
 . Since a declaration of a mistrial inevitably affects a constitutionally protected interest, the trial court " 'must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.' "
 
 Washington
 
 ,
 
 434 U.S. at 514
 
 , 98 S.Ct. at 825,
 
 54 L.Ed.2d at 733
 
 (quoting
 
 United States v. Jorn
 
 ,
 
 400 U.S. 470
 
 , 486,
 
 91 S.Ct. 547
 
 , 557,
 
 27 L.Ed.2d 543
 
 , 557 (1971) ).
 

 *348
 
 As such, the trial court's discretion in determining whether manifest necessity exists is limited.
 
 Jones
 
 ,
 
 67 N.C.App. at 381
 
 ,
 
 313 S.E.2d at
 
 812 ;
 
 see
 

 U.S. v. Sloan
 
 ,
 
 36 F.3d 386
 
 , 394 (4th Cir. 1994) (holding "manifest necessity" means a "high degree" of necessity is required for mistrial to be appropriate). The Fourth Circuit explained:
 

 First enunciated 170 years ago, this bedrock principle has been consistently reiterated and followed. Its basis is the Fifth Amendment's Double Jeopardy Clause.... Because jeopardy attaches before the judgment becomes final, it has been held that the double jeopardy clause protects a defendant's valued right to have his trial completed by a particular tribunal, and so prohibits the declaration of a mistrial absent manifest necessity.
 

 Sloan
 
 ,
 
 36 F.3d 386
 
 at 393 (citations and quotation marks omitted).
 

 Our courts have set forth two types of manifest necessity: physical necessity and the necessity of doing justice.
 
 State v. Crocker
 
 ,
 
 239 N.C. 446
 
 , 450,
 
 80 S.E.2d 243
 
 , 246 (1954). For example, physical necessity occurs in situations where a juror suddenly takes ill in such a manner that wholly disqualifies him from proceeding with the trial.
 
 Id
 
 . Whereas the necessity of doing justice "arises from the duty of the court to guard
 
 *577
 
 the administration of justice from fraudulent practices" and includes "the occurrence of some incident of a nature that would render impossible a fair and impartial trial under the law."
 
 Id
 
 . (citation and quotation marks omitted).
 

 Both the Supreme Court of the United States and North Carolina courts have recognized that manifest necessity exists to declare a mistrial when the indictment contains a fatal defect, which deprives the court of jurisdiction.
 
 Somerville
 
 ,
 
 410 U.S. at 468-69
 
 ,
 
 93 S.Ct. at 1072-73
 
 ,
 
 35 L.Ed.2d at
 
 433-34 ;
 
 State v. Whitley
 
 ,
 
 264 N.C. 742
 
 , 745,
 
 142 S.E.2d 600
 
 , 603 (1965) (citing
 
 State v. Jordan
 
 ,
 
 247 N.C. 253
 
 , 256,
 
 100 S.E.2d 497
 
 , 499 (1957) ). Thus, "[a] defendant is not subjected to double jeopardy when an insufficient indictment is quashed, and he is subsequently put to trial on a second, sufficient indictment."
 
 State v. Oakes
 
 ,
 
 113 N.C.App. 332
 
 , 340,
 
 438 S.E.2d 477
 
 , 481,
 
 disc. review denied
 
 ,
 
 336 N.C. 76
 
 ,
 
 445 S.E.2d 43
 
 (1994).
 

 As noted, this Court does not favor dismissing indictments where the indictment is constitutionally sufficient to enable the court to proceed to judgment.
 
 See
 

 Greer
 
 ,
 
 238 N.C. at 327
 
 ,
 
 77 S.E.2d at
 
 919 ;
 
 N.C. Gen. Stat. § 15-153
 
 . Unlike in
 
 Somerville
 
 and
 
 Oakes
 
 , in this case, the original indictment in 14 CRS 50887 was not fatally defective, it sufficiently alleged attempted voluntary manslaughter.
 
 See
 

 *349
 

 Bullock
 
 ,
 
 154 N.C.App. at 243-45
 
 ,
 
 574 S.E.2d at
 
 23-24 ;
 
 but see
 

 Somerville
 
 ,
 
 410 U.S. at 468-69
 
 ,
 
 93 S.Ct. at 1072-73
 
 ,
 
 35 L.Ed.2d at
 
 433-34 ;
 
 Oakes
 
 ,
 
 113 N.C.App. at 340
 
 ,
 
 438 S.E.2d at 481
 
 . The trial court was aware of this Court's opinion in
 
 Bullock
 
 and cited it when it first realized the indictment had failed to allege "with malice aforethought."
 

 The Supreme Court of the United States has emphasized the importance of "preserving the defendant's primary control over the course to be followed in the event of such [a prejudicial] error,"
 
 Lee
 
 ,
 
 432 U.S. at 32
 
 ,
 
 97 S.Ct. at 2146
 
 ,
 
 53 L.Ed.2d at 88
 
 (citation and quotation marks omitted), and a defendant's a "valued right" to have his case heard before the original jury impaneled.
 
 Washington
 
 ,
 
 434 U.S. at 503-05
 
 ,
 
 98 S.Ct. at 829-30
 
 ,
 
 54 L.Ed.2d at 727-28
 
 . As noted below, in 14 CRS 50887, Defendant argued that based on
 
 Bullock
 
 the trial could and should properly proceed on attempted voluntary manslaughter.
 

 Since the trial court retained jurisdiction, it could have proceeded on attempted voluntary manslaughter, and Defendant requested that the trial court proceed on that charge, no lack of jurisdiction or manifest necessity existed for the trial court to declare a mistrial to allow the State to re-indict Defendant. Judge Powell erred by ruling the indictment in 14 CRS 50887 was otherwise jurisdictionally defective to charge any crime to justify dismissal and by using this incorrect determination as a basis to declare a mistrial.
 

 C. Dismissals and Mistrial based on Defendant's Motion or Consent
 

 This case is distinguishable from those in which a dismissal or mistrial was entered based on the defendant's motion or consent. The Supreme Court of the United States has distinguished cases where the mistrial is entered pursuant to the defendant's motion or complicity, from those where the mistrial is entered over the defendant's objection.
 
 See
 

 Scott
 
 ,
 
 437 U.S. at 92-93
 
 , 98 S.Ct. at 2194-95,
 
 57 L.Ed.2d at
 
 74-75 ;
 
 Sloan
 
 ,
 
 36 F.3d at 393
 
 (holding there was no manifest necessity for the trial court to declare a mistrial over the defendant's objections).
 

 The Supreme Court explained when a defendant moves for a mistrial:
 

 Such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error."
 
 United States v. Dinitz
 
 ,
 
 424 U.S. 600
 
 , 609 [
 
 96 S.Ct. 1075
 
 ],
 
 47 L.Ed.2d 267
 
 (1976). But "[t]he Double Jeopardy Clause
 
 *350
 
 does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions."
 
 Id
 
 . at 611 [
 
 96 S.Ct. 1075
 
 ].
 

 *578
 

 Scott
 
 ,
 
 437 U.S. at 93-94
 
 , 98 S.Ct. at 2195,
 
 57 L.Ed.2d at 76
 
 .
 

 Similarly, when a defendant moves for a dismissal on grounds not related to the basis of factual guilt or innocence the Supreme Court held:
 

 [T]he defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant.... we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.
 

 Id
 
 . at 98-99, 98 S.Ct. at 2198,
 
 57 L.Ed. 2d at 79
 
 . Thus, if a
 
 defendant
 
 successfully seeks to avoid his trial prior to its conclusion by actions or a motion of mistrial or dismissal, the Double Jeopardy Clause is generally not offended by a second prosecution.
 
 Id
 
 . at 93, 98 S.Ct. at 2195,
 
 57 L.Ed.2d at 75
 
 .
 

 1.
 
 State v. Priddy
 

 North Carolina courts have also addressed this issue. In a case similar to the one here, this Court considered whether double jeopardy bars the State from appealing a trial court's order granting defendant's motion to dismiss for lack of jurisdiction.
 
 Priddy
 
 ,
 
 115 N.C.App. at 551
 
 , 445 S.E.2d at 613. In
 
 Priddy
 
 , the defendant moved to dismiss the case for lack of jurisdiction.
 
 Id.
 
 at 548, 445 S.E.2d at 611. The defendant in
 
 Priddy
 
 asserted the superior court lacked jurisdiction because the impaired driving charge was not initially tried in the district court.
 
 Id
 
 . at 548, 445 S.E.2d at 612. The superior court granted the defendant's motion to dismiss and the State appealed.
 
 Id
 
 . at 548, 445 S.E.2d at 611.
 

 This Court held the superior court had jurisdiction over the impaired driving charge and the superior court erred in dismissing the indictment for lack of jurisdiction.
 
 Id
 
 . at 550, 445 S.E.2d at 612. Addressing the double jeopardy issue, this Court emphasized the defendant, not the State, moved to dismiss and the dismissal was "based solely upon the trial court's ruling that it had no jurisdiction and was entirely unrelated to the sufficiency of evidence as to any element of the offense
 
 *351
 
 or to defendant's guilt or innocence."
 
 Id
 
 . at 551, 445 S.E.2d at 613. Based on
 
 Scott
 
 , this Court concluded double jeopardy did not bar the State's appeal or a retrial of the charge against the defendant.
 
 Id
 
 .
 

 2.
 
 State v. Vestal
 

 Another panel of this Court later distinguished
 
 Priddy
 
 and
 
 Scott
 
 in
 
 State v. Vestal
 
 ,
 
 131 N.C.App. 756
 
 ,
 
 509 S.E.2d 249
 
 (1998). In
 
 Vestal
 
 , this Court held that double jeopardy barred the State from appealing the trial court's
 
 sua sponte
 
 order dismissing the case with prejudice, because the police department had violated an order from the trial court.
 
 Id
 
 . at 759,
 
 509 S.E.2d at 252
 
 . The Court recognized that
 
 Scott
 
 and
 
 Priddy
 
 :
 

 mandate the rule against double jeopardy will not bar an appeal by the government
 
 where the defendant took an active role in the dismissal
 
 , because defendant essentially chose to end the trial and cannot later complain that he was " 'deprived of his "valued right to have his trial completed by a particular tribunal." ' "
 

 Id.
 

 (emphasis supplied) (quoting
 
 Scott,
 

 437 U.S. at 99-100
 
 , 98 S.Ct. at 2198,
 
 57 L.Ed.2d at
 
 80 ). Unlike in
 
 Scott
 
 and
 
 Priddy
 
 , the defendant in
 
 Vestal
 
 did not take an active role in the process, which led to dismissal of the charge against him, but was "
 
 involuntarily
 
 deprived of his constitutional right to have his trial completed by the jury which had been duly empaneled and sworn."
 
 Id
 
 . at 760,
 
 509 S.E.2d at 252
 
 (emphasis supplied).
 

 In
 
 Priddy
 
 and
 
 Scott
 
 , the defendants successfully sought termination of the original proceedings on grounds not related to factual guilt or innocence. The present case is similar to
 
 Vestal
 
 , where the defendant did not take any active role in acquiring dismissal. Here, Defendant actively argued against the trial court's order dismissing the indictment and declaring a mistrial in 14 CRS 50887. Although Defendant recognized the error in the indictment, he requested the trial proceed on the sufficiently alleged offense of attempted voluntary manslaughter. No manifest necessity existed to allow the trial court
 
 *579
 
 to declare a mistrial in 14 CRS 50887 over Defendant's persistent objections.
 

 D. Greater and Lesser-Included Offenses under the Double Jeopardy Clause
 

 Since we hold no manifest necessity existed to declare a mistrial in 14 CRS 50887 over the defendant's objection, we now consider the effects of the erroneous declaration. As noted earlier, if an "order of mistrial has been improperly entered over a defendant's objection, defendant's
 
 *352
 
 motion for dismissal at a subsequent trial on the same charges must be granted."
 
 Odom
 
 ,
 
 316 N.C. at 310
 
 ,
 
 341 S.E.2d at 334
 
 .
 

 Under the Double Jeopardy Clause, when one offense is a lesser-included offense of another, the two offenses are considered the same criminal offense.
 
 Etheridge
 
 ,
 
 319 N.C. at 50
 
 ,
 
 352 S.E.2d at
 
 683 (citing
 
 Brown v. Ohio,
 

 432 U.S. 161
 
 ,
 
 97 S.Ct. 2221
 
 ,
 
 53 L.Ed.2d 187
 
 (1977) ;
 
 State v. Revelle,
 

 301 N.C. 153
 
 ,
 
 270 S.E.2d 476
 
 (1980) ). Once jeopardy has attached to the lesser-included offense, a defendant may not thereafter be prosecuted for either the greater or lesser-included offenses.
 
 See
 

 id
 
 . ;
 
 Brown
 
 , 432 U.S. at 169, 97 S.Ct. at 2227, 53 L.Ed.2d at 196 ("Whatever the sequence may be, the Fifth Amendment forbids successive prosecution ... for a greater and lesser included offense.");
 
 State v. Birckhead
 
 ,
 
 256 N.C. 494
 
 , 499,
 
 124 S.E.2d 838
 
 , 843 (1962) (holding that once the defendant had been placed in jeopardy on the lesser-included offense of assault with intent to commit rape, double jeopardy principles implicit in the law of the land clause of the state constitution prohibited his subsequent prosecution for the greater offense of rape).
 

 Attempted voluntary manslaughter is a lesser-included offense of attempted first-degree murder and is considered as the same offense under the Double Jeopardy Clause.
 
 See
 

 State v. Rainey
 
 ,
 
 154 N.C.App. 282
 
 , 290,
 
 574 S.E.2d 25
 
 , 30,
 
 disc. review denied
 
 ,
 
 356 N.C. 621
 
 ,
 
 575 S.E.2d 520
 
 (2002) ;
 
 Etheridge
 
 ,
 
 319 N.C. at 50
 
 ,
 
 352 S.E.2d at 683
 
 . Once jeopardy attaches to one of these offenses, the defendant cannot be subsequently tried on the other.
 
 See
 

 Brown
 
 , 432 U.S. at 169, 97 S.Ct. at 2227, 53 L.Ed.2d at 196.
 

 Once Judge Powell declared a mistrial where no manifest necessity existed in 14 CRS 50887, the State was prohibited from retrying Defendant on either attempted first-degree murder or attempted voluntary manslaughter, since they are considered the same offense under the Double Jeopardy Clause.
 
 See
 

 Etheridge
 
 ,
 
 319 N.C. at 50
 
 ,
 
 352 S.E.2d at 683
 
 . As a result, pursuant to double jeopardy, Judge Thornburg also erred by denying Defendant's motion to dismiss prior to trial in 15 CRS 50992.
 
 See
 

 Odom
 
 ,
 
 316 N.C. at 310
 
 ,
 
 341 S.E.2d at 334
 
 .
 

 VII. Defendant's Previous Writ of Certiorari to this Court
 

 After Judge Thornburg denied his motion to dismiss made at the start of the second trial, Defendant filed a motion for temporary stay and petition for writ of supersedeas. He also petitioned this Court for writ of certiorari. Defendant asserted the double jeopardy provisions of the North Carolina Constitution and the Constitution of the United States prohibited further prosecution of him on the new indictment in 15 CRS 50992.
 

 *353
 
 Defendant had no statutory right to appeal Judge Thornburg's interlocutory order.
 
 See
 

 State v. Shoff
 
 ,
 
 118 N.C.App. 724
 
 ,
 
 456 S.E.2d 875
 
 (1995) (dismissing the defendant's appeal from an order denying his motion to dismiss on double jeopardy grounds),
 
 aff'd
 
 ,
 
 342 N.C. 638
 
 ,
 
 466 S.E.2d 277
 
 (1996). However, Appellate Rule 21 authorizes petition for review of a non-appealable interlocutory order by writ of certiorari. N.C. R. App. P. 21(a)(1) (2015).
 

 We recognize this Court's order dissolving the temporary stay and denying Defendant's petitions for writs of supersedeas and certiorari "without prejudice," essentially furthered the violation of Defendant's constitutional rights.
 
 See
 

 Abney v. United States
 
 ,
 
 431 U.S. 651
 
 , 660-62,
 
 97 S.Ct. 2034
 
 , 2040-41,
 
 52 L.Ed.2d 651
 
 , 660-61 (1977) (holding the Double Jeopardy Clause protects a defendant not only from conviction after successive trial, but from even being subjected to a second trial);
 
 State v. Watson
 
 ,
 
 209 N.C. 229
 
 , 231,
 
 183 S.E. 286
 
 , 287 (1936) (stating the rule against double jeopardy "not only prohibits a second punishment for the same offense, but it goes further and forbids a second trial for
 
 *580
 
 the same offense, whether the accused has suffered punishment or not, and whether in the former trial he has been acquitted or convicted" (citation omitted)).
 

 By denying his writ of certiorari, Defendant was subjected to a subsequent trial and conviction prior to final determination of whether his constitutional right against double jeopardy would be violated by such prosecution.
 

 VIII. Conclusion
 

 The original indictment in 14 CRS 50887 was constitutionally and statutorily sufficient to provide jurisdiction, allege attempted voluntary manslaughter, and was not fatally defective. The trial court erred in finding otherwise.
 

 Since the indictment was not fatally defective and the trial court retained jurisdiction, no manifest necessity existed to declare a mistrial over Defendant's objections. Once the State's failure to allege "with malice aforethought" in the original indictment was discovered and communicated by Judge Powell in 14 CRS 50887, he should have required the State to either dismiss the charge against Defendant or to proceed to trial on attempted voluntary manslaughter.
 
 See
 

 Etheridge
 
 ,
 
 319 N.C. at 50
 
 ,
 
 352 S.E.2d at 683
 
 .
 

 North Carolina courts have clearly stated "where the order of mistrial has been improperly entered over a defendant's objection, defendant's motion for dismissal at a subsequent trial on the same charges
 
 *354
 
 must be granted."
 
 Odom
 
 ,
 
 316 N.C. at 310
 
 ,
 
 341 S.E.2d at 334
 
 . With a valid indictment and no manifest necessity to declare a mistrial, the State was barred from re-indicting Defendant on attempted murder or manslaughter. Judge Thornburg erred by denying Defendant's motion to dismiss the subsequent indictment in 15 CRS 50992. By denying his writ of certiorari, Defendant was subjected to a subsequent trial and conviction prior to final determination of whether his constitutional right against double jeopardy would be violated by such prosecution.
 

 We do not address the merits of Defendant's other arguments regarding the trial in 15 CRS 50992, as we hold Defendant's double jeopardy rights were violated by his subsequent indictment, prosecution, trial, and conviction in 15 CRS 50992. We conclude Defendant's conviction by the jury and judgment entered thereon for attempted first-degree murder in 15 CRS 50922 must be vacated.
 
 It is so ordered
 
 .
 

 VACATED.
 

 Chief Judge McGEE and Judge DIETZ concur.